## VOL. 73, JANUARY TERM, 1917.      873

Glass v. Va.-Carolina Chem. Co.—Opinion of Court.

THOMAS B. GLASS, *Plaintiff in Error,* v. VIRGINIA-CARO-
LINA CHEMICAL COMPANY, A CORPORATION, *Defend-
ant in Error.*

Opinion Filed April 17, 1917.

On an issue of failure of consideration in an action on a promissory
note, where there is some substantial evidence tending to prove
the issue of failure of consideration, a verdict for the plaintiff
should not be directed by the Court.

Writ of Error to Circuit Court for Alachua County;
Jas. T. Wills, Judge.

Judgment reversed.

*Hillburn & Merryday,* for Plaintiff in Error;

*W. S. Broome,* for Defendant in Error.

SHACKLEFORD, J.—The Virginia-Carolina Chemical
Company, a corporation, instituted an action at law
against Thomas B. Glass. The declaration contains three
counts, the first count being based upon a certain prom-
issory note, dated the fourth day of February, 1913, exe-
cuted by the defendant to the order of the plaintiff for
the amount of $1937.73 and payable on the first day of
June, 1913, "with interest from maturity at the rate of
8% per annum, with all costs of collection, including
10% attorney's fees, if collected by law or through an at-
torney," and the second and third counts being the com-
mon counts for goods, wares and merchandise bargained,
sold and delivered to the defendant by the plaintiff at the
defendant's request and for money found to be due the
plaintiff by the defendant on an account stated between

·them. To the declaration the defendant filed the following amended pleas:

"That the plaintiff at the commencement of this suit was, and still is, indebted to this defendant in an amount larger than the plaintiff claims, for this, to-wit: That on and prior to the 4th day of February, A. D. 1913, the said plaintiff was engaged in the manufacture and sale of commercial fertilizer in the State of Florida under the name of The Florida Fertilizer Company, and that under the said name, the plaintiff, prior to the 4th day of February, 1913, and on or about to-wit: the 19th day of October, A. D. 1912, entered into a bargain or contract with this defendant, wherein and whereby the plaintiff agreed to bargain, sell and deliver to this defendant fifty tons of commercial fertilizer for the agreed price of $1475.00; and that it was the duty of the plaintiff upon selling or offering for sale the said fertilizing material to securely attach a label or tag to each and every package, barrel or bag of said commercial fertilizer, showing the number of net pounds of fertilizer in the package, the name, the brand or trade mark under which the fertilizer was sold, and the name and address of the manufacturer, and the chemical analysis of such fertilizer, stating the minimum percentage of ammonia and the source from which such ammonia was derived, the minimum percentage of potash soluble in water, the minimum percentage of available phosphoric acid, the minimum percentage of insoluble phosphoric acid, the maximum per centage of moisture contained therein, also the maximum percentage of chlorine contained therein, and the material from which such fertilizer was compounded.

"And that after the said 19th day of October, 1912, and prior to the 4th day of February, 1913, the plaintiff delivered to the defendant the said fifty tons of fertiliz-

ing material pursuant to the said agreement or contract, and that attached to each package thereof was a tag upon which the following representations, statement, guaranty and analysis was given:

"100 POUNDS.
SPECIAL POTATO MIXTURE,
For T. B. Glass, Hastings, Fla.
manufactured by

FLORIDA FERTILIZER COMPANY, BRANCH
Gainesville, Florida.
*Guaranteed Analysis.*

"Moisture, 212 Degrees F. Not to ex-
ceed _____10    per cent.
Ammonia (from Bright Cotton Seed
Meal, Blood and Bone) not less than___ 4½ per cent.
Available Phosphoric Acid, not less than_ 6    per cent.
Insoluble Phosphoric Acid, not less than_ 1    per cent.
Potash, $K^2O$, not less than _____ 7    per cent.
Chlorine, not to exceed _____ 1    per cent.

"These goods are made from 500 lbs. Cotton Seed Meal, 7½ per cent; 525 lbs. Blood and Bone, 10 per cent; 675 lbs. Acid Phosphate, 16 per cent; 300 lbs. High Grade Sulphate Potash 48 per cent.

"That the defendant is now and was at the time of the purchase of said fertilizer a citizen of the State of Florida, and that he purchased said fertilizing material for his own use, and that at the time of the sale and delivery of said fertilizing material the plaintiff was engaged in the business of manufacturing and selling fertilizer in the State of Florida; and that on or about the 28th day of November, 1913, this defendant after receiving said fer-

tilizing material from the plaintiff as aforesaid under the said guaranteed anlysis as given above, did submit a fair sample of said fertilizing material to the Commissioner of Agriculture of the State of Florida for analysis; and that sample so submitted was secured in the presence of two disinterested persons, and in the presence of such disinterested persons was securely bottled, corked and that said sample so securely bottled, corked and sealed was, in the presence of said disinterested persons placed in the hands of a disinterested person to be delivered by him for this defendant to the Commissioner of Agriculture of the State of Florida, and that said sample so delivered to said disinterested person was delivered to the Commissioner of Agriculture of the State of Florida for this defendant; and that the Commissioner of Agriculture of the State of Florida, did on or about the 9th day of December, 1913, require the State Chemist to analyze the said sample of fertilizer so taken, and that such analysis was made, and that upon such analysis being so made, this defendant found that the said fertilizing material was deficient in certain of its constituent elements, and did not contain the percentage of ammonia derived from high grade blood and bone and bright cotton seed meal which said tag and guaranteed analysis guaranteed said fertilizing material to contain, and was deficient in potash. And this defendant discovered from said analysis so made that he had been defrauded by the deficiencies hereinabove specified.

"And the defendant further says that the amount demanded by the plaintiff, the manufacturer or vendor of said fertilizing material so purchased was $1475.00.

"Wherefore, this defendant says that the plaintiff by reason of the facts stated herein, became, was, and still is, indebted to the defendant in the sum of money equal to

twice the amount demanded by the plaintiff from said material, that is to say: The plaintiff became, was, and still is indebted to the defendant in the sum of $2950.00, which said sum this defendant is willing to set off against the plaintiff's claim and for which said sum this defendant prays judgment, and this defendant hereto attaches a bill of particulars, marked 'Exhibit A', to be taken with and as a part of this plea to the same extent and as fully as if herein set forth in full.

"And for an amended second plea to plaintiff's declaration and each count thereof, this defendant says: that on or about the 19th day of October, 1912, the plaintiff then being the manufacturer and vendor of commercial fertilizer in the State of Florida, entered into an agreement with the defendant wherein the defendant, in consideration of the promise and agreement on part of the plaintiff to sell and deliver to the defendant fifty tons of fertilizing material at $29.50 per ton, and fifteen tons of fertilizing material at $30.64 per ton, which the plaintiff represented to be of a kind, grade, and quality, and compounded from materials which would make a fertilizer fit and suitable for the purpose of growing and producing Irish potatoes in the defendant's potato fields in the vicinity of Hastings, Florida, did promise to pay the plaintiff the sum of $1937.75.

"That thereafter, during the months of December, 1912, and January, 1913, the plaintiff delivered the sixty-five tons of fertilizing material, which it had agreed to sell, and which it had represented to the defendant was fit for the purposes aforesaid.

"That the defendant relying upon the promise of the plaintiff, and believing that the fertilizer was of a kind, grade and quality, and believing that said fertilizer was fit and suitable for the purpose for which it was pur-

chased, gave his promissory note to the plaintiff for $1937.75, which said amount of said promissory note included the amount of purchase price of said fertilizing material, that the said promissory note above mentioned and referred to in the promissory note sued upon in plaintiff's declaration and that the amount of $1937.75 is the sum of money sued for and claimed in plaintiff's declaration.    That the defendant relying upon the aforesaid promise of the plaintiff and believing that it had kept its agreement and furnished the fertilizer which it had promised to furnish, and that the fertilizer was fit for the purpose for which it was sold as aforesaid, planted in due season a crop of Irish potatoes in his fields in the vicinity of Hastings, Florida, to be harvested in the spring of 1913, that in planting said fields the defendant used and planted standard and suitable seed potatoes which were well adapted for use in planting such fields and farmed and cultivated the same according to the usual and approved method of farming and cultivation for Irish potatoes culture in that vicinity.

"That all but four hundred pounds of said fertilizing materal purchased as aforesaid, was consumed in the effort to cultivate said Irish potatoes, and that said fertilizer was properly applied and used for such purpose. But notwithstanding the promise and undertaking on the part of the plaintiff and the guarantee made as to the kind, quality and fitness of said fertilizer the plaintiff violated his promise to furnish a kind and grade of fertilizer fit and suitable for the purpose aforesaid and furnished to the defendant a fertilizer which was wholly unfit for use in growing and cultivating Irish potatoes in the defendant's field in the vicinity of Hastings, Florida, and that the said fertilizing material so furnished as aforesaid did not and would not serve the purpose for which it was

VOL. 73, JANUARY TERM, 1917. 879

Glass v. Va.-Carolina Chem. Co.—Opinion of Court.

prepared, and that the plaintiff assured the defendant it would serve.

"That the said worthlessness and unfitness of said fertilizer was not discovered by this defendant until long after said note was given and not until all but four hundred pounds of said fertilizer was used and consumed in an effort to produce a crop of Irish potatoes by use thereof in the manner aforesaid.

"That no other consideration was given by the plaintiff to the defendant for the said sum of $1937.75 sued for by the plaintiff in its declaration.

"Wherefore this defendant says that by reason of the facts stated herein the consideration for the said fifty tons of fertilizer at $29.50 per ton, and the said fifteen tons of fertilizer at $30.64 per ton, totaling and aggregating the sum of $1937.75, wholly failed.

"And for a plea to the second and third counts in plaintiff's declaration, this defendant says that he never was indebted as alleged."

To these pleas the plaintiff filed the following replications:

"For replication to defendant's first amended plea, the plaintiff says that it was not at the commencement of this suit and that it is now indebted to the defendant as set forth and alleged in the defendant's said first amended plea; and the plaintiff further says that the defendant did not on or about the 28th day of November, 1913, after receiving said fertilizing material from the plaintiff, as averred in plaintiff's said amended plea, submit a fair sample of said fertilizing material to the Commissioner of Agriculture of the State of Florida for analysis, but the plaintiff says that the sample of said fertilizing material, so selected by the defendant and submitted to the Commissioner of Agriculture of the State of Florida, for

analysis, was selected by the defendant about one year after the use of said fertilizing material by the defendant, as is shown in the said plea of the defendant; and the plaintiff says, that at the time of the sale and delivery by the plaintiff to the defendant of the fertilizing material set forth and mentioned in said amended plea, the said fertilizing material did contain the percentage of ammonia derived from high grade blood and bone and bright cotton seed meal, which said tag and guaranteed analysis, guaranteeing said fertilizing material contain, and was not deficient in potash.

"2. And for a replication to the defendant's amended second plea, to plaintiff's declaration, this defendant says that the fertilizer mentioned in said amended plea was made from the formula prescribed and furnished by defendant and was compounded and manufactured especially for defendant, according to defendant's instructions and from the materials named, authorized and directed by defendant; and plaintiff denies that it made any representations, warranties or guaranties that said fertilizer was fit for the purpose of growing and fertilizing a crop of Irish potatoes in defendant's potato fields at or near Hastings, Florida, but that as before stated said fertilizer was compounded from the material authorized and directed by defendant to be compounded from and according to the formula furnished plaintiff by defendant; and plaintiff further says that said fertilizing material was not unfit for use as a fertilizer in defendant's potato fields for the purpose of growing and raising a crop of Irish potatoes; and plaintiff further says that said fertilizing material was not worthless as a fertilizer for potatoes in the Irish potato fields in and near Hastings, Florida, as set forth in defendant's said amended plea; and the plaintiff further says that the said defendant did not rely upon

any promise of the plaintiff that said fertilizer was of a kind, grade and quality and fit for the purpose alleged in said amended plea; and plaintiff further denies each and every allegation and averment of the defendant's said amended plea, wherein the said defendant sets forth a defense to the plaintiff's cause of action upon the ground of a failure of consideration.

"And now comes the plaintiff and joins issue upon each and every of the amended pleas of the defendant, filed herein on August 10th, 1914."

We must confess that, as the plaintiff filed special replications to the amended first and second pleas and at the same time "joins issue upon each and every of the amended pleas," which, in so far as the transcript discloses, would include such first and second amended pleas, which are addressed to the entire declaration, as well as the plea addressed to the second and third counts, it·is somewhat difficult to determine just what issues were made by the pleadings. Be that as it may, the case was tried before a jury upon such issues and after all the evidence of the parties litigant had been submitted the trial judge directed the jury to find a verdict for the plaintiff, whereupon the jury returned a verdict in favor of the plaintiff for the amount of $2519.00, upon which verdict judgment was rendered and entered. This judgment the defendant·has brought here for review and has assigned eight errors, the second and fourth of which are abandoned.

As there was some substantial evidence tending to prove the issue of failure of consideration, it was error to direct a verdict for the plaintiff. See Gardner Lumber Co. v. Bank of Commerce, 73 Fla. 246, 74 South. Rep. 313. Also see Carney v. Stringfellow, decided here at the present term.

56

For this error the judgment must be reversed.

BROWNE, C. J., and TAYLOR, WHITFIELD and ELLIS, JJ., concur.