William G. Roe in March, 1922, shipped over the Atlantic Coast Line Railroad and connecting carriers three carloads of grapefruit to a certain consignee at *Page 764 
Chicago, Illinois. The fruit was delivered in Chicago to the consignee in due course but Roe claims that the fruit was wrongfully delivered because the last connecting carrier did not require the consignee to produce and deliver the original bill of lading issued by the initial carrier; so that Mr. Roe's drafts upon the consignee for the price of the fruit were not paid and he was damaged in the amount of its value.
Mr. Roe brought an action against the Atlantic Coast Line Railroad, the initial carrier, to recover the value of the fruit shipped as the measure of damages for the wrongful delivery.
The Railroad Company pleaded not guilty and interposed four additional pleas in which it was averred in substance that each shipment was an interstate shipment and was controlled by the federal law upon the subject; that the bills of lading issued by the defendant upon receipt of the fruit were straight bills of lading which, under the act of Congress referred to, were required to be marked "not negotiable" and were so endorsed and that it became the carrier's duty under the law applicable in such cases to deliver the fruit upon its arrival at destination to the person named in the bill of lading as the consignee thereof upon demand, which it did.
The plaintiff demurred to these pleas. The demurrer was sustained and the parties went to trial upon the plea of not guilty.
There was no error in sustaining the demurrer because the facts averred in the pleas were admissible under the general issue. Under that issue, which denies the wrong and injury of which complainant was made, it was necessary for the plaintiff to establish the particular contractual relation between him and the carrier out of which grew the latter's duty to deliver the fruit only upon production of *Page 765 
the original bill of lading and that relation could be established only by evidence tending to show that the title to the fruit remained in the shipper until he ordered a delivery of the same and that consignee was not entitled to possession on arrival.
When a carrier receives goods under a contract to deliver them to a person named, without any reservation of power of disposal by the consignor, delivery to such person or his authorized agent completes the contract of carriage and relieves the carrier from any further liability on that feature of the contract. This doctrine rests upon the theory that the title to the goods passes to the consignee on delivery to the carrier. See 10 C. J. 256; 4 R. C. L. 819, 821, 838, 839.
A delivery to the wrong person may be treated as a conversion of the property. Southern R. Co. v. Webb, 143, Ala. 304, 39 South. Rep. 262, 111 Am. St. Rep. 45, 5 Ann. Cas. 97.
The presumption that the consignee is the owner is not absolute but may be rebutted. If the carrier has notice that the consignee is not the owner or entitled to receive the goods delivery to him will constitute conversion. See Southern Express Co. v. Dickson, 94 U.S. 549, 24 L.Ed. 285; Louisville N. R. Co. v. United States Fidelity Guaranty Co., 125 Tenn. 658, 148, S.W. Rep. 671.
So the plaintiff in order to maintain his action had to show by appropriate evidence that the carrier had notice that the consignee was not the owner of the fruit and that it should have been delivered only upon order of the shipper.
There was a verdict for the plaintiff, a motion for a new trial was denied and judgment entered against the defendant in the sum which the jury, under appropriate instructions, *Page 766 
found to be the value of the goods alleged to have been wrongfully delivered.
The defendant seeks to reverse that judgment here on writ of error.
The shipment out of which this action grew was an interstate shipment and is covered by the provisions of the Interstate Commerce Act. See Charlotte H. N. R. Co. v. Truette, 81 Fla. 152,87 South. Rep. 427.
The Transportation Act of 1920 provides that all rates, fares, charges, classifications, regulations and practices in anywise changing, affecting or determining any part of the aggregate of rates, fares, charges or value of the service rendered which were in effect in February, 1920, on the lines of carriers subject to the Interstate Commerce Act shall continue in force and effect until thereafter changed by state or federal authority respectively or pursuant to authority of law.
The Federal Statute of August 29, 1916, provides that bills of lading issued by any common carrier for the transportation of goods from a place in one state to a place in another state shall be governed by that Act, which defines a straight bill of lading and an order bill. The former is one in which it is stated that the goods are consigned to a specified person; an order bill is one in which it is stated that the goods are consigned or destined to the order of any person named in such bill. A straight bill is required by that Act to have placed plainly upon its face by the carrier issuing it the words "non-negotiable" or "not negotiable." The carrier is justified by the Act in delivering goods to the consignee named in a straight bill of lading. See Sections 1-8, Federal Statutes, Act August 29, 1916.
It is also provided by the Act above referred to that where a carrier delivers goods to one who is not lawfully entitled to possession of them the carrier shall be liable to *Page 767 
any one having a right of property or possession in the goods if he delivered the goods otherwise than as authorized by the provisions of Section Nine "and though he delivered the goods" to the consignee named in a "straight bill" "he shall be so liable if prior to such delivery he (a) had been requested by or on behalf of a person having a right of property or possession in the goods not to make such delivery or (b) had information at the time of the delivery that it was to a person not lawfully entitled to the possession of the goods." "Such request or information, to be effective within the meaning of this section, must be given to an officer or agent of the carrier the actual or apparent scope of whose duties includes action upon such a request or information and must be given in time to enable the officer or agent to whom it is given, acting within reasonable diligence, to stop delivery of the goods."
The evidence in the case tends to show that one shipment was made from Winterhaven on March 24, 1922, in car FGE 27165 for which a straight bill of lading was issued by the carrier's agent. The consignee named was "J. Trankina Co., Chicago, Ill." The words "Straight Bill of Lading" and "not negotiable" were plainly printed upon the face of the bill but it also bore upon its face the words "Allow inspection deliver on surrender original B/L."
Another shipment was made from Haskell, Florida, for which a conductor's receipt was issued dated "3/22-22." The initial and number of the car was PFE 19208. The consignee named was the plaintiff, W. M. Roe, and destination was Way Cross, Georgia. For this receipt a straight bill of lading with the words "not negotiable" plainly printed on it was issued at Winterhaven, Florida, and dated "3/25-22." The same consignee and destination named thereon as the first. This bill of lading had the *Page 768 
words "Diversion issued in lieu Haskell Fla 2/21-22" plainly printed on the face of it. It was signed by the same agent "Per C D".
Another shipment was made from Haskell for which a conductor's receipt was issued dated March 24, 1922; the number and initial of the car being FGE 27135. The consignee named was the plaintiff, Roe, and the destination Way Cross, Georgia. This receipt was exchanged for a straight bill of lading dated Winterhaven "Mch. 27th, 22", naming Trankina Co. consignee and "Chicago, Ills" the place of destination. This bill of lading had written upon its face the words: "Diversion issued in lieu of Haskell Fla B/L Mch 24th 1922 Allow inspection deliver on surrender original B/L." It was signed by the agent.
The evidence was sufficient to warrant the jury in finding that at the time of the shipment of the first car, FGE 27165, the shipper, Roe, instructed the carrier's agent that the shipper desired the car to be shipped "Order Notify"; that is to say, not make delivery to the consignee upon arrival of the fruit at destination but ship so that he could not get the fruit without taking up the original bill of lading. The testimony of the plaintiff that such were his verbal instructions is corroborated by the endorsement upon the original bill. The evidence as to the notice to the carrier of the shipper's desires concerning the two shipments from Haskell to Way Cross and the diversion to Chicago consists of the testimony of the plaintiff, the endorsement upon the receipt issued March 27, 1922, and two telegrams signed by the carrier's agent at Winterhaven, Mr. Cameron, referring to the two cars by name and number and advising the carrier to "allow inspection deliver on surrender bill lading."
This evidence was sufficient under the Federal Statute *Page 769 
to show that the carrier had been requested by the person having the right of property not to make delivery to the consignee named in the bills and that he was not lawfully entitled to the possession of the fruit except upon production of the original bill of lading.
There was no error in the admission of the evidence. The verdict was for the value of the fruit at the point of origin of the shipment which, from the evidence, was less than at the point of conversion.
The case is not one where the carrier is relieved from liability upon delivery to the consignee because although the bills of lading were issued upon printed forms of straight and non-negotiable bills the evidence was sufficient to warrant a jury in finding that the carrier had been notified before delivery that the consignee was not entitled to delivery of the fruit to him until he obtained possession of the bills and surrendered them to the carrier.
The evidence for the plaintiff was undenied except by Mr. Cameron, a witness for the plaintiff and the agent who signed the bills of lading for the carrier. He said that after the bills were issued, perhaps the same day, Mr. Roe came to him and said that he wanted to know if there was some way he could stop those cars and get his money out of this man for his fruit but he did not wish to ship them order notify. He mentioned some way and I told him we would make an effort to do so and which we did."
Here was a contradiction by plaintiff's witness of the evidence on which the plaintiff relied to show that the consignee was not entitled to delivery of the fruit until he had surrendered the original bill of lading.
This evidence should have gone to the jury but the court directed a verdict for the plaintiff. That was error for which the judgment should be reversed because the charge *Page 770 
was an assumption that the facts in issue were established. If it was true, as Mr. Cameron testified, that the plaintiff merely wanted the carrier to require the consignee to produce the bills of lading before delivery to him of the fruit but did not want the shipment to be "order notify" the carrier committed no wrong in delivering the fruit to the consignee upon its arrival See Johnson v. Louisville N. R. Co., 59 Fla. 305,52 South. Rep. 195; Jacksonville Terminal Co. v. Smith,67 Fla. 10, 64 South. Rep. 354; Nelson v. Hall, 73 Fla. 810,74 South. Rep. 877; Jacksonville v. Glover, 69 Fla. 701,69 South. Rep. 20; Atlantic Coast Line R. Co. v. Pelot, 62 Fla. 121,56 South. Rep. 496; Glass v. Virginia-Carolina Chemical Co.,73 Fla. 873, South. Rep. 981.
The judgment is reversed.
STRUM, J., concurs.
WHITFIELD, P. J., AND TERRELL AND BUFORD, J. J., concur in the opinion.
BROWN, C. J., concurs in the result.