Cheshire,
No. 5261.

## Monadnock Regional School District

*v.*

## Fitzwilliam &a.

Argued July 16, 1964.
Decided August 7, 1964.

*Homer S. Bradley* and *Homer S. Bradley, Jr.* for the Monadnock Regional School District, furnished no brief.

*Bell, Bell & Shortlidge* (*Messrs. Ernest L. Bell III* and *Raphael J. Shortlidge* orally), for the town of Fitzwilliam.

*Goodnow, Arwe & Ayer* (*Mr. John R. Goodnow* orally), for the towns of Gilsum, Surry and Swanzey.

*McLane, Carleton, Graf, Greene & Brown* and *John A. Graf* (*Mr. John A. Graf* orally), for the town of Troy.

*Cristiano & Kromphold* and *Lewis A. McMahon* (*Mr. McMahon* orally), for the towns of Richmond and Roxbury.

*Gardner C. Turner* for the town of Sullivan.

LAMPRON, J. Because of their interrelation we will consider together the first two transferred questions which read as follows:
"1. Is the doctrine of estoppel available in this action to Fitzwilliam, Troy, Richmond and Roxbury?
"2. If the answer to question 1 is 'yes,' may the Court find estoppel if it finds the facts in accordance with the requests for findings of fact?"
Estoppel, whether called equitable estoppel or estoppel *in pais,*

has been said to arise when "a party who knows or should know the truth is absolutely precluded, both at law and in equity, from denying, or asserting the contrary of, any material fact, which, by his words or conduct, affirmative or negative, intentionally or through culpable negligence, he has induced another, who was excusably ignorant of the true facts and who had a right to rely upon such words or conduct, to believe and act upon them thereby, as a consequence reasonably to be anticipated, changing his position in such a way that he would suffer injury if such demand or contrary assertion were allowed." 19 Am. Jur., Estoppel, *s.* 34, *p.* 634. See also, *Drew* v. *Kimball*, 43 N. H. 282, 285; *Gilbert* v. *Manchester*, 55 N. H. 298; *Bowen* v. *Casualty Co.*, 99 N. H. 107, 112; *Margolis* v. *Insurance Company*, 100 N. H., 303, 308.

Estoppel rests largely on the facts and circumstances of the particular case. *Jennings* v. *Bituminous Casualty Corporation*, 47 Ill. App. 2d 243. It can be invoked as a defense against municipal corporations, as is being done here, if the necessary facts are established to warrant its application. *Gilbert* v. *Manchester, supra*; *Lucier* v. *Manchester*, 80 N. H. 361, 362. Thus limited the answer to the first question is "yes."

The facts which the towns of Fitzwilliam, Troy, Richmond and Roxbury seek to establish as the basis for their defense of estoppel against the towns of Gilsum, Swanzey, Sullivan and Surry are essentially the following.

During the formation of Monadnock, starting in 1960, it was the policy and intention of the participants that the fiscal needs of the district would be raised by the constituent communities according to the following three-part formula. First, foundation aid under RSA 198:8, 9, 10 as received by the district on behalf of the qualifying towns (RSA 195:15) was to be applied against the total budget of the district. Second, one half of the balance of the budget was to be paid by the towns in accordance with their average daily membership. Third, the remainder was to be apportioned on the basis of the ratio that the equalized valuation of each pre-existing district bears to that of the cooperative district. RSA 195:8 II (now RSA 195:7 II).

Monadnock was established on February 11, 1961 (effective as of July 1, 1962) by the five towns of Fitzwilliam, Swanzey, Troy, Richmond and Roxbury. Shortly thereafter the district received written inquiries from the towns of Gilsum, Sullivan

and Surry expressing interest in joining Monadnock. They were accepted at a district meeting held April 20, 1961.

The requests for findings of fact received by the Trial Court as an offer of proof state that prior to their admission the latter three towns had actual knowledge of the manner of allocating foundation aid adopted by Monadnock. These towns had been informed by a consultant firm employed in the organization of the district and by the State Board of Education that state foundation aid was to be deducted from the gross budget in the first instance.

Further offer of proof is made that this information was made available to the voters of these three towns who voted to join Monadnock of their own volition thereby increasing the capital expense of the cooperative. None of these towns questioned or challenged the manner of allocating foundation aid. Had a different formula for allocation of this aid been proposed, Gilsum, Sullivan and Surry "would not have been allowed to join the cooperative district, or at least not under a formula for tax allocation such as that then in use which already fully allowed for equalized land valuation." Fitzwilliam request No. 12. Proof also will be made that these three towns received a material benefit as a result of annexation pursuant to the original formula of allocation.

Fitzwilliam, Troy, Roxbury and Richmond maintain that because all of the constituent towns in Monadnock agreed to, acquiesced in, and relied on the original three-part formula for the apportionment of the financial costs of the district, these towns should be estopped from asserting a position inconsistent with the method of financial apportionment.

In *Gilsum* v. *Monadnock Regional School District*, 105 N. H. 361, this court held that it was the intent of the Legislature "that a town which is a part of the cooperative school district should benefit from foundation aid to the same extent that its pre-existing school district would have benefited if it still existed. In order to accomplish this purpose the foundation aid paid to the cooperative district because of and measured by the needs of a pre-existing school district must be credited to the town which constituted it." *P.* 365.

This means that for the school year 1962-63 the sum of $110,352.59 received by Monadnock in foundation aid would not be deducted from the total budget as required by part

"First" of the original formula. Instead the percentage of cost to be borne by each town would be arrived at by applying parts "Second" and "Third" of the original formula to the total budget. Then the full amount of the foundation aid which the pupils attending Monadnock from a certain pre-existing district would have entitled that district to receive would be credited against its share of the cost previously determined in the above manner. The balance would constitute the assessment against that town to be raised by it from the taxable property within its limits. RSA 198:5.

Applying the actual figures for that school year specifically to Gilsum, under the original formula it receives credit for $6,014.18 of foundation aid and the assessment against it to be raised by taxation in the town is $46,966.65. If foundation aid is applied in accordance with *Gilsum* v. *Monadnock Regional School District, supra*, Gilsum receives credit for $22,-981.14 (the amount to which it was entitled as a pre-existing school district) and the amount to be raised by taxation is $29,999.35 or $30,004.90.

Under the latter method Gilsum, Sullivan, Surry and Swanzey would be entitled to credits against the assessments made against them by Monadnock in accordance with the original formula. Conversely Fitzwilliam, Richmond, Roxbury and Troy would be subject to supplemental assessments to make up the lesser amounts thus assessed against them.

The bare bones issue therefore is whether, assuming the facts stated in the requests for findings are established and true, equity and good conscience require that Gilsum, Sullivan, Surry and Swanzey be estopped from asserting an improper allocation of foundation aid for the school years 1962-63 and 1963-64 and from advocating for the succeeding years, subject to RSA 195:8, an allocation of such aid in accordance with the *Gilsum* decision rather than according to the original three-part formula.

The elements essential to such an estoppel are (1) a representation or a concealment of material facts; (2) the representation must have been made with knowledge of the facts; (3) the party to whom it was made must have been ignorant of the truth of the matter; (4) it must have been made with the intention that the other party should act upon it; and (5) the other party must have been induced to act upon it to his preju-

dice. *Stevens* v. *Dennett*, 51 N. H. 324, 333; *Horn* v. *Cole*, 51 N. H. 287, 297; *Hampton* v. *Paramount Pictures Corporation*, 279 F. 2d 100 (9th Cir. 1960); 19 Am. Jur., Estoppel, s. 42, *pp*. 642-643.

On April 21, 1961, when Gilsum, Sullivan and Surry were accepted as members of Monadnock, and prior thereto when Swanzey became part of the district, the only statutory formula for apportionment of costs was the following. Costs of capital outlay and operation of a cooperative school district were to be apportioned (I) on the basis of the ratio of the equalized valuation of each pre-existing district to that of the cooperative, or (II) one half of such costs was to be apportioned as above and the other half apportioned on the average daily membership for the preceding year. Laws 1959, 195:1. There was therefore no statutory basis for part "First" of the original three-part formula which was adopted and which provided for the deduction of all foundation aid from the total budget. Furthermore parts "Second" and "Third" being based on statutory method II above, weighted the original formula to impose as heavy a burden upon the towns with small valuations in relation to the number of pupils attending Monadnock as the existing law would permit. Such towns are Gilsum, Sullivan, Surry and Swanzey.

The application of the foundation aid received by Monadnock on account of these constituent towns based on their need as a pre-existing school district is the essence of the claim for estoppel. The requirement that Monadnock must give full credit to a component town for the aid thus received was not definitely established until April 30, 1964. *Gilsum* v. *Monadnock Regional School District*, 105 N. H. 361. There has been no offer to prove that Gilsum or any other town knew, should have known or was culpably negligent in not knowing at the time it joined Monadnock that part "First" of the original formula was contrary to the statutory requirements pertaining to the application of foundation aid. 31 C.J.S., Estoppel, s. 70, *p*. 424. Nor has there been any offer to prove that the acts and conduct of Gilsum and of the other towns sought to be estopped resulted other than from their ignorance of, or an innocent mistake as to, their legal right to have the foundation aid received by Monadnock, based on their needs, deducted from their individual assessment instead of from the total budget as required

by the original formula. *Bd. of Education* v. *Hoek*, 38 N. J. 213; *Baltimore* v. *Chesapeake Marine Ry. Co.* (Md. App.), 197 A. 2d 821.

The record shows no inequitable delay in the assertion of the rights of the towns sought to be estopped. Offer has been made to prove that Gilsum, Sullivan and Surry did not complain about the allocation of foundation aid according to the original three-part formula at meetings held on June 27, 1962, February 28, 1963 and March 22, 1963. However Monadnock was organized as of July 1962 and started operating in the fall of that year. On or about October 2, 1962, which was soon after the first budget and request for assessment was received by the towns for the first year of operation of the school, Gilsum instituted the proceeding for declaratory judgment which culminated in the *Gilsum* decision by this court. 19 Am. Jur., Estoppel, *s. 59, p.* 669.

Argument is made that elementary and essential fairness as well as equity and good conscience require that Gilsum, Sullivan, Surry and Swanzey be estopped from contesting the apportionment of foundation aid by Monadnock because of the additional tax burden it would impose on the towns seeking the estoppel. It is true that an apportionment of foundation aid in accordance with the *Gilsum* case would increase the amount to be raised by Fitzwilliam, Troy, Richmond and Roxbury to meet their share of the operating costs of Monadnock. However a comparison of the tax rates in terms of dollars per thousand for Fitzwilliam, the town with the highest cost per student, and Gilsum, the town with the lowest cost per student, for the school year 1962-63 under the *Gilsum* case method of apportioning foundation aid discloses the following. Fitzwilliam's assessment of $140,160.90 raised from properties of an equalized valuation of $4,833,497 would result in a tax for that purpose at the rate of about $29 per thousand of valuation. Gilsum's assessment of $30,004.90 on its equalized valuation of $860,216 would produce a rate of $34.88 per thousand. It cannot be said that application of the *Gilsum* case rule results in such an unconscionable disproportion in the burden placed on the taxpayers of the respective towns as to require relief by means of estoppel. This is rendered more meaningful when it is considered that the very purpose of foundation aid is to remedy the "startling" inequality in the ability of school districts and towns

in this state to finance the public schools. Report of Interim Commission on Education (1963) *p.* 54.

We hold as a matter of law that on all the facts and circumstances shown in the record before us, assuming the establishment and truth of all the evidence offered, a finding of estoppel could not be made. It follows that the answer to question No. 2 is "no."

The third and last question transferred is the following:

"Would the constitutional rights of Fitzwilliam, Troy, Roxbury and Richmond be infringed by the proposed change in the method of allocation of costs among the constituent towns?"

Argument is advanced that the constitutional rights of the citizens of the town of Troy are infringed by the provisions of RSA 195:8 II now RSA 195:7 II. This provides that on determination by a majority vote of the cooperative district meeting the cost of operation of the cooperative district shall be prorated among the pre-existing districts in the following manner: "II One-half of all such costs shall be apportioned on the basis of the ratio that the equalized valuation of each pre-existing district bears to that of the cooperative district and one-half shall be apportioned on the average daily membership for the preceding year."

In the words of Troy's brief (*p.* 15) it is argued that "New Hampshire statutes, at the present time, delegate the power to raise school money to the selectmen and simultaneously reserve the manner of apportioning the school money so raised. The net effect is that the selectmen of Troy are precluded from raising school funds, since, overriding these duties, are the prerequisites of apportionment based partially on taxable wealth . . . The General Court, by divesting itself of their taxing power on one hand and by retaining actual control on the other, has acted in a manner in which each citizen and taxpayer of Troy is denied equality of privileges . . . [and] results in a denial to their citizens and taxpayers of the equal protection of the law."

The Legislature in authorizing the creation of cooperative school districts (RSA ch. 195) has determined the manner in which the costs of operation will be apportioned between the towns desiring to join such a district. We know of no constitutional provision which prevents the Legislature from so doing. *Clough* v. *Osgood,* 87 N. H. 444; *Amyot* v. *Caron,* 88 N. H.

394, 398, 399. The cost of operation of the district school to be paid by constituent towns having been determined by the statutory method contained in the act creating the district, the selectmen are then directed to raise this amount by taxation in the towns. RSA 198:5. This is within the sovereign power of taxation and the control of the taxing process vested in the Legislature by our Constitution. Const., Pt. II, *Art.* 2d; *Hampton* v. *Marvin*, 105 N. H. 34, 36; see also, *Keene* v. *Roxbury*, 97 N. H. 82, 84. The factors for determining the share of the costs of operating Monadnock to be paid by a constituent town are the average daily number of its students attending the school and its equalized valuation. We fail to see how this method of determining costs can be deemed arbitrary or to result in the denial of equal protection of the laws to the citizens of Troy or of any other town in Monadnock. *Boston &c. Railroad* v. *State*, 60 N. H. 87, 95; *Duncan* v. *Jaffrey*, 98 N. H. 305.

The last constitutional argument made is that unequal, disproportionate and unreasonable taxation results in the towns of Fitzwilliam, Troy, Richmond and Roxbury as a result of a combination of the provisions for foundation aid to needy local school districts (RSA 198:8, 9, 10), the provisions of RSA 195:7 I and II for apportionment of the costs of operation of a cooperative school district, and the "Gilsum case" method of allocating foundation aid. As concrete proof of this unconstitutionality it is pointed out that for the academic year 1964-65 Troy must pay $598.28 for each of its 368 students; Fitzwilliam $782.62 for each of its 208 students; and Gilsum only $109.36 or $260.00 for each of its 165 students (if the special grants made by Laws 1963, *c.* 198, *p.* 253 and *c.* 199, *p.* 346 are not included).

To promote the general welfare by equalizing the educational opportunities of all the children of the state, the Legislature can provide foundation aid to districts and towns otherwise unable to provide adequate education for its inhabitants. See *Opinion of the Justices*, 88 N. H. 500, 508. The fact that the receipt of this aid together with the computation of the operating costs of the district school according to a formula contained in the act authorizing the creation of such a district results in one town in the district having to raise more dollars per pupil attending the cooperative school than another town in the same district

does not place an unequal tax burden on any inhabitant of a particular taxing district which is the constitutional equality required. *Boston &c. Railroad* v. *State*, 60 N. H. 87, 95; *Duncan* v. *Jaffrey*, 98 N. H. 305. The Constitution does not guarantee that all taxing districts shall have an equal number of pupils to educate, or that the aggregate costs of education shall be identical.

The answer to the third question is "no."

The towns of Gilsum, Sullivan, Surry and Swanzey are not estopped from requiring Monadnock to give each of them full credit for the amount of foundation aid received by it because of the needs of each particular town as a pre-existing school district. This manner of allocating foundation aid is to apply to the school years 1962-63, 1963-64 and succeeding years, subject to the provisions of RSA 195:8, in the absence of legislative action.

Monadnock should therefore make adjustments in the assessments to be levied by each town which will be necessary as a result of the allocation of foundation aid in accordance with *Gilsum* v. *Monadnock Regional School District*, 105 N. H. 361.

*Remanded.*

All concurred.