Strafford,
No. 5295.

CONTINENTAL TANNERS, INC.

*v.*

GONIC FOOTWEAR, INC.

CONTINENTAL TANNERS, INC.

*v.*

STACKPOLE MOTOR TRANSPORTATION, INC.

STACKPOLE MOTOR TRANSPORTATION, INC.

*v.*

GONIC FOOTWEAR, INC.

STACKPOLE MOTOR TRANSPORTATION, INC.

*v.*

HYMAN ROFFMAN.

Argued March 2, 1965.
Decided May 24, 1965.

*Sheehan, Phinney, Bass, Green & Bergevin* and *Joseph F. Devan* and *John F. Cullity* (*Mr. Cullity* orally), for Continental Tanners, Inc.

*Fisher, Parsons, Moran & Temple* (*Mr. Robert H. Temple* orally), for Gonic Footwear, Inc.

*McLane, Carleton, Graf, Greene & Brown* and *G. Peter Guenther* (*Mr. Guenther* orally), for W. A. Stackpole Motor Transportation, Inc.

*Hyman Roffman,* pro se, filed no brief.

DUNCAN, J. These are four actions arising out of interstate shipments on December 29, 1959 and January 4, 1960 of leather goods worth $9,927.77 consigned to Gonic Footwear, Inc. by Continental Tanners, Inc. *via* Stackpole Motor Transportation, Inc. Trial by the Court (*Morris,* J.) with a verdict for $8,387.40 in favor of Continental Tanners, Inc. in its action against Gonic Footwear, Inc., and verdicts for the defendants in the three other actions. The exceptions of Continental Tanners, Inc. and Gonic Footwear, Inc. were reserved and transferred by the Presiding Justice.

The Court made findings and rulings in writing, in addition to granting and denying certain requests for findings and rulings submitted by the parties. The underlying facts appear from the following findings:

"These are four actions arising out of two shipments of leather made by the plaintiff, Continental Tanners, Inc. The consignee of each shipment was Gonic Footwear, Inc. Each shipment was made on a straight bill of lading. The first shipment was made on December 31, 1959 and the second shipment was made on January 4, 1960. Each shipment was given to Marstons Express of Danvers, Massachusetts and picked up by the defendant, Stackpole Motor Transportation, Inc. as the terminal carrier. The first shipment was ninety-seven bundles of leather and the second shipment was eighteen bundles of leather. The defendant, Hyman Roffman, President and Treasurer and principal stockholder of

Royce Shoe Corporation of Newmarket, New Hampshire, telephoned Efim S. Toochan, a partner of Toochan Brothers, sales agents for the plaintiff, Continental Tanners, Inc., and ordered the one hundred and fifteen bundles of leather to be shipped to Gonic Footwear, Inc. in Gonic, New Hampshire.

"It was agreed in the pre-trial agreement that the first shipment of ninety-seven bundles began December 31, 1959 and that the second shipment was made January 4, 1960. It was further agreed that each shipment came in to the defendant, Stackpole's terminal in Rochester on the same day that each was shipped. It was further agreed that the first shipment of ninety-seven bundles was then carried to Gonic Footwear, Inc.

"It was further agreed in the pre-trial agreement that the second shipment left Continental Tanners, Inc. January 4, 1960 and it was agreed between the plaintiff, Continental Tanners, Inc. and the defendant, Stackpole Motor Transportation, Inc., (Paragraph 11), that the second shipment also went to Gonic. It was agreed by all parties that both the first shipment and the second shipment was delivered at Royce Shoe Corporation in Newmarket by the defendant, Stackpole Motor Transportation, Inc.

"On all the evidence, including the pre-trial agreement, the Court finds that it is more probable than otherwise that sometime after the ninety-seven bundles of leather had been delivered to the defendant, Gonic Footwear, Inc., Matthew W. Krassner, Treasurer of Gonic Footwear, Inc. at the time of the delivery of the leather, telephoned to the defendant, Stackpole Motor Transportation, Inc. and told its dispatcher on duty, one Emile Boulanger, to pick up the leather at the defendant, Gonic Footwear, Inc.'s premises and that it belonged to the Royce Shoe Corporation in Newmarket, New Hampshire. The ninety-seven bundles were picked up by the defendant Stackpole's employee, kept over night at the terminal and then delivered to the Royce Shoe Corporation.

"Because of the lack of evidence the Court is unable to make any findings as to what happened to the eighteen bundles of leather and makes its finding on the basis of the facts agreed to in the pre-trial agreement."

Royce Shoe Corporation filed a voluntary petition in bankruptcy on February 25, 1960. At the time of the transactions from which these actions arise, the defendant Roffman was president

of Royce Shoe Corporation. Roffman testified that he had ordered the goods to be shipped to Royce Shoe Corporation at Newmarket. There was evidence that the defendant's son Arnold was a director and holder of 55 per cent of the stock of Gonic Footwear, Inc., which was incorporated on November 12, 1959. Previously the factory at Gonic had been owned and operated by Royce Shoe Corporation.

The Trial Court found that "Hyman Roffman represented to [the president of Continental Tanners, Inc.] that he was ordering the leather in question for Gonic Footwear, Inc. and requested that it be shipped to Gonic Footwear, Inc. . . . intending to have Royce Shoe Corporation obtain possession of it and use it." The Court also found that the defendant Roffman "furnished the funds for his twenty-one year old [son] Arnold's interest in Gonic Footwear, Inc. at its formation and when Arnold's stock was sold the proceeds became an asset of the Royce Shoe Corporation bankruptcy estate."

The defendant Gonic Footwear, Inc. contends that the verdict against it should be set aside, and that any liability to the shipper, Continental Tanners, Inc. is the liability of the terminal carrier, Stackpole Motor Transportation, Inc. This argument proceeds largely upon the assumption that Gonic told Stackpole that "the leather was not theirs," refused to accept delivery, and "did not direct that the leather be delivered to Royce Shoe Corporation."

The Trial Court, however, found otherwise. It found "that the 97 bundle shipment was physically delivered at, and placed under the control of, Gonic Footwear, Inc."; that "a receipt for the 97 bundle shipment was signed by a duly authorized representative of Gonic Footwear, Inc."; and that "Gonic Footwear, Inc. accepted delivery of the 97 bundle shipment." The Court then ruled that this "constituted legal delivery and discharged the obligations of W. A. Stackpole Transportation, Inc. arising out of the bill of lading issued for the leather."

The Court further found that "at the request and direction" of an officer of Gonic Footwear, Inc. "the 97 bundle shipment was [thereafter] transported. . .to the Royce Shoe Corporation" in Newmarket, and that the carrier was not advised "that Gonic Footwear, Inc. had not ordered the 97 bundle shipment, or that it did not intend to accept and pay for it, or that it had no right to direct the disposition of the leather."

The Court ruled that Gonic Footwear, Inc. "in directing [the

97 bundle shipment] to Royce Shoe Corporation, negligently deprived the consignor of its property"; and that by receipting for the shipment and then directing delivery to Royce Shoe Corporation, Gonic Footwear, Inc. exercised such dominion over and control over the goods as to make it liable to Continental Tanners, Inc.

The dispatcher in the carrier's Rochester office testified that the Gonic general manager telephoned him after delivery of the goods to Gonic and asked him "to pick up the leather and said it went to Royce Shoe in Newmarket." Similarly the truck driver who carried the leather back from Gonic to the Stackpole terminal testified that the shipper and receiver at the Gonic plant who had previously receipted for the 97 bundles, "said it went to Newmarket to Royce Shoe." Asked if they "didn't say it wasn't theirs," this witness answered: "They didn't say no such thing."

Since there was evidence to warrant the Court's findings, the arguments of Gonic Footwear, Inc. which rest upon a different view of the facts cannot be accepted.

The Court correctly ruled that acceptance of the goods by Gonic Footwear, Inc. "discharged the obligations of . . . Stackpole . . . arising under the bill of lading issued for that leather." Since the shipment was interstate, the rights and liabilities of the parties are controlled by federal law. *Cincinnati & Tex. Pac. Ry.* v. *Rankin,* 241 U. S. 319; *Akerly* v. *Express Agency,* 96 N. H. 396. Section 89 of the Bills of Lading Act provides in part as follows: "*s.* 89. Delivery; when justified. A carrier is justified . . . in delivering goods to one who is — . . . (b) The consignee named in a straight bill for the goods . . . . " 49 U.S.C.A., *s.* 89. Upon acceptance of delivery by the consignee, Gonic Footwear, Inc., the liability of Stackpole Motor Transportation, Inc. ceased. *Republic Carloading & Distrib. Co.* v. *Missouri Pacific R. Co.,* 302 F. 2d 381, 386 (8th Cir. 1962); *Atlantic Coast Line R.R. Co.* v. *Roe,* 91 Fla. 762, 765. Subsequent movement of the goods by Stackpole at Gonic's request after acceptance of the goods by Gonic would give rise to no liability on the part of Stackpole to Continental. *Anthony & Jones Co.* v. *N.Y.C. & H.R.R. Co.,* 223 N. Y. 21, 26. See *Hayes* v. *Wells Fargo & Co. Express* (St. Louis Ct. of App., Mo.), 206 S.W. 229; *Carter* v. *St. Louis — SF Ry Co.,* 179 Ark. 865.

The Court ruled, additionally, that the transportation of the goods to Royce Shoe Corporation at the request of Gonic also

would have constituted legal delivery and discharged Stackpole's obligations under the bill of lading, if the delivery to Gonic had not already been completed. See *City National Bank* v. *El Paso R.R.*, 262 U. S. 695, 699; *Dobbin* v. *Mich. Central R.R. Co.*, 56 Mich. 522. Since the ruling that delivery to Gonic operated to discharge the carrier from liability to the shipper is sustained, it is unnecessary to pass upon the exceptions to these additional rulings.

It is argued on behalf of Gonic Footwear, Inc. that title to the goods did not pass to it because the order for the goods was not shown to have been authorized by it. However, this issue is not conclusive of the right of Continental Tanners, Inc. to recover, since it was found that by directing delivery to Royce Shoe Corporation, Gonic converted goods in which Continental had a superior right. *Jones* v. *Stone*, 78 N. H. 504; *Largy* v. *Morrison*, 88 N. H. 270. See *Atlantic Coast Line R. R. Co.*, v. *Roe*, 91 Fla. 762, *supra*, 765.

The verdict in the sum of $8,387.40 for the 97 bundles of leather shipped on December 29, 1959 is sustained, and the exceptions of Gonic Footwear, Inc. are overruled.

Continental Tanners, Inc. sought by its actions against Gonic Footwear, Inc. and Stackpole Motor Transportation, Inc. to also recover the value of the 18 bundles shipped on January 4, 1960. The Trial Court stated that it made its finding with respect to this shipment on the basis of facts agreed to in the pretrial agreement. This agreement was that the goods were shipped on January 4, 1960, that they were "picked up by Stackpole," "went to the Stackpole Terminal in Rochester" and "wound up and [were] delivered at Royce Shoe in Newmarket." Although the defendant Roffman did not agree to the latter provision on pretrial, he stated at the trial that he did not dispute it.

Following the verdicts, Continental Tanners, Inc. moved for a verdict in its favor in the amount of $1,540.37 representing the value of the 18 bundles of leather, pointing out that the Court had granted its requests for findings that the delivery of the leather to Royce Shoe Corporation was without notice to Continental and without its authorization. This motion was denied subject to the plaintiff's exception. In our view of the law, this was error.

The facts established by the pretrial agreement served to make out a *prima facie* case of misdelivery. In the absence of any finding of acceptance of the 18 bundles by the consignee or of

any delivery in accordance with consignee's instructions, the agreed facts established delivery by the carrier to a person not entitled thereto. 49 U.S.C.A., *s.* 90. It follows that the verdict for the defendant in the action by Continental Tanners, Inc. against Stackpole Motor Transportation, Inc. must be set aside, and the case remanded for entry of a verdict for the plaintiff in that case for the value of the 18 bundle shipment.

It follows that the verdict for Roffman in the action by Stackpole against him should also be set aside. The Trial Court found and ruled that Roffman ordered the leather in the name of Gonic, intending Royce Shoe Corporation to obtain possession and use of it, and that he participated in the conversion of the leather by Royce Shoe Corporation. A request for a ruling that Roffman was liable to Stackpole in an amount equal to its liability to Continental was denied "since Stackpole is found not to be liable."

In view of the conclusions hereinbefore reached, the ruling denying this request is set aside, and the case is remanded for the entry of a verdict for the plaintiff in the action of Stackpole Motor Transportation, Inc. against Roffman in the same amount as the verdict to be entered in the action by Continental against Stackpole.

In *Continental Tanners, Inc.* v. *Gonic Footwear, Inc.,* and *Stackpole Motor Transportation, Inc.* v. *Gonic Footwear, Inc.: Judgment on the verdicts.*
In *Continental Tanners, Inc.* v. *Stackpole Motor Transportation, Inc.* and *Stackpole Motor Transportation, Inc.* v. *Roffman: Verdicts set aside; remanded.*

All concurred.