Hillsborough
No. 6777

AMERICAN RED BALL TRANSIT COMPANY, INC.

v.

CHRISTOPHER P. McCARTHY

July 30, 1974

*Sheehan, Phinney, Bass & Green* and *G. Mitchell Eckel III (Mr. Eckel* orally) for the plaintiff.

*Wiggin, Nourie, Sundeen, Pingree & Bigg,* and *W. Wright Danenbarger* and *Jeffrey B. Osburn (Mr. Danenbarger* orally) for the defendant.

GRIFFITH, J. This is an action in assumpsit brought by American Red Ball Transit Company, Inc., against defendant, Christopher P. McCarthy, to recover freight, handling and storage charges arising out of an interstate shipment of defendant's household goods on June 17, 1969. After a pretrial hearing,

trial without jury based on motions for summary judgment by both parties, supporting affidavits, the bill of lading, and certain agreed statements of fact resulted in a verdict for defendant. Plaintiff seasonably excepted to the trial court's verdict and all questions of law raised by its exception were reserved and transferred by *Batchelder, J.*

Prior to June 17, 1969, defendant resided in Lake Forest, Illinois, where he was employed by the Randolph Manfacturing Company. Randolph transferred the defendant to its New England affiliate and agreed with him to pay his moving expenses. Defendant arranged with the plaintiff to have his household goods transported to Bedford, New Hampshire, informing plaintiff that his employer would pay his moving expenses. Subsequent to these arrangements, Randolph wrote plaintiff authorizing it "to send a 'bill' covering all expenses relative to the moving" of all of defendant's personal effects. Accordingly, plaintiff agreed to bill Randolph and instructed its agent, the Narrod Red Ball Moving Company, that it had authority to send a bill for all moving expenses to the Randolph Manufacturing Company. The goods were shipped under a Combined Uniform Household Goods Bill of Lading and arrived in Bedford, New Hampshire, on June 17, 1969.

The bill of lading indicated that defendant was both the shipper and the consignee to whom the goods were delivered and stated that Randolph was to be billed for the freight charges. While defendant admits to signing the bill of lading in two places, he asserts that the third signature appearing above the term "SHIPPER'S SIGNATURE" is an apparent forgery. He maintains that he did not intend to become liable for the shipment when he signed the bill of lading and that when it was presented to him, both prior to the shipment in Illinois and after the shipment in New Hampshire, none of the terms and conditions on the reverse side of the document were brought to his attention. He claims that prior to the shipment the moving van operator informed him that a signature was required "only to give the mover authority to take the goods so that they wouldn't be guilty of theft", and that after the shipment he was asked to sign merely to acknowledge receipt of the goods.

At some point in time between the original negotiations concerning the shipment and the present proceeding, Randolph went bankrupt. Rather than pursue Randolph in bankruptcy, plaintiff brought this action to recover freight charges from defendant. Defendant successfully argued before the trial court that plaintiff was estopped to recover freight costs from him due to its failure to bill Randolph within the seven days required by Interstate Commerce Act Regulations (49 C.F.R. § 1322.1) then in force. Accordingly, the trial court granted defendant's motion for summary judgment.

Plaintiff argues that the trial court erred in not granting its motion for summary judgment, because even if the trial court correctly found that defendant did not assume liability for the shipment under the terms of the Combined Uniform Household Goods Bill of Lading and Freight Bill, he became liable for payment as consignee, when he, as owner of the goods, accepted the shipment.

Since this case arises from an interstate shipment of goods the rights and liabilities of the parties are governed by federal law. *Continental Tanners v. Gonic Footwear Co.*, 106 N.H. 297, 301, 210 A.2d 480, 483 (1965). While the Supreme Court of the United States has never decided a case involving these facts, in other decisions it has enunciated the general rule that the consignee of an interstate shipment of goods becomes liable for payment of shipping costs when he, as owner of the goods, accepts the shipment from the carrier. *Illinois Steel Co. v. B. & O. R. Co.*, 320 U.S. 508, 513 (1944); *Louisville & N.R. Co. v. United States*, 267 U.S. 395, 397 (1925); *Louisville & N.R. Co. v. Central Iron Co.*, 265 U.S. 59, 70 (1924); *Pittsburgh, C.C. & St. L.R. Co. v. Fink*, 250 U.S. 577, 581 (1919). Though it has been stated that the parties to an interstate shipment are free to agree to their own terms subject to the prohibition against unlawful discrimination and the limitations imposed by the bill of lading (*Illinois Steel Co. v. B. & O.R. Co., supra* at 512), the liability of the consignee arises by implication of law when he, as owner of the goods, accepts the shipment. 4 Elliott, Railroads § 2351, at 872, 873-74 (3d ed. 1922); *Pittsburgh C.C. & St. L.R. Co. v. Fink, supra* at 581. Therefore, while Randolph's liability for pay-

ment of the shipping costs arose from its express promise to pay, defendant's liability arose as a matter of law once he accepted the shipment.

Defendant contends that despite a consignee's liability for payment of freight costs, conduct by a carrier may estop it from collecting freight charges from the consignee. He asserts that plaintiff's failure to bill Randolph within seven days (49 C.F.R. § 1322.1) estops it in this instance. We recently held that the provisions of the Interstate Commerce Act (49 U.S.C. § 323) were designed to prevent discrimination in rates and not to enable a party to avoid payment. *AAA Trucking Corp. v. Spherex, Inc.*, 110 N.H. 472, 474, 272 A.2d 594, 595 (1970). We concluded in that case that a delay in billing alone "did not establish the facts necessary to sustain a finding of estoppel under our law." *Id.*; *see Director General v. McCormack*, 82 N.H. 528, 136 A. 253 (1927). The essential elements of estoppel are as follows: "(1) A representation or a concealment of material facts; (2) the representation must have been made with knowledge of the facts; (3) the party to whom it was made must have been ignorant of the truth of the matter; (4) it must have been made with the intention that the other party should act upon it, and (5) the other party must have been induced to act upon it to his prejudice." *Monadnock School Dist. v. Fitzwilliam,* 105 N.H. 487, 491-92, 203 A.2d 46, 49-50 (1964); *Bigwood v. Merrimack Village Dist.,* 108 N.H. 83, 87, 229 A.2d 341, 344-45 (1967).

Defendant relies on three recent cases which held that a carrier's conduct estopped it from recovering freight costs from the consignee. *Southern Pac. Transp. Co. v. Campbell Soup Co.*, 455 F.2d 1219 (8th Cir. 1972); *Consolidated Freightways Corp. v. Admiral Corp.*, 442 F.2d 56 (7th Cir. 1971); *Lyon Van Lines, Inc. v. Cole,* 9 Wash. App. 382, 512 P.2d 1108 (1973). The first two of those cases involved double payment situations in which the carrier represented on the bill of lading that the freight charges had been prepaid by the consignor. In reliance upon the carrier's prepayment representation the consignee forwarded the freight charges to the consignor, thinking he was reimbursing him when in fact no prepayment had been made. Subsequently, when the consignor went

bankrupt, the carrier sought to recover from the consignee, but was estopped to do so. The facts in those cases would also be sufficient to sustain a finding of estoppel under our law. *Monadnock School Dist. v. Fitzwilliam,* 105 N.H. 487, 491-92, 203 A.2d 46, 49-50 (1964). The third case relied on by defendant involved facts almost identical to those in this case, but relied on the two foregoing double payment decisions for its authority. That court stated that "the shipping costs could be considered to be partial compensation to [defendant] for the work he performed . . . and [he] would effectively be making a double payment if he were held liable for shipping costs which he had already earned." *Lyon Van Lines, Inc. v. Cole,* 9 Wash. App. 382, 387 n.2, 512 P.2d 1108, 1112 n.2 (1973).

We think that *Cole* and this case are distinguishable from the double payment cases. *Southern Pac. Transp. Co. v. Campbell Soup Co.,* 455 F.2d 1219 (8th Cir. 1972); *Consolidated Freightways Corp. v. Admiral Corp.,* 442 F.2d 56 (7th Cir. 1971). We cannot agree that if defendant is held liable for payment, he will in effect be made to pay twice for the shipment. Whether or not Randolph's agreement to pay defendant's moving expenses can be considered compensation for past services, it has no bearing on the shipment agreement. Had Randolph remained solvent, an action by defendant against it could have been brought to recover the full costs of the shipment. While it might be said that plaintiff's delay in billing Randolph increased the risk of nonpayment, there is no assurance that Randolph would have paid the shipment costs had it been billed earlier. Thus, it is Randolph's bankruptcy which prevents defendant from realizing the full benefit of his agreement with Randolph and full reimbursement for payment of shipping costs. We are of the opinion that plaintiff cannot be held accountable for any knowledge of Randolph's precarious financial condition at the time Randolph agreed to pay defendant's shipping expenses, in the absence of any assertions to that effect in the affidavit filed in support of the defendant's motion for summary judgment.

While the actions of plaintiff's agent in presenting the bill of lading to defendant are sufficient to support a finding

that defendant was not liable for the shipment on the basis of his signatures on the bill of lading, these facts become immaterial in the light of defendant's liability based on his acceptance of the shipment. Nothing in defendant's affidavit establishes any misrepresentation, concealment, reliance, or inducement to act which would support a finding of estoppel against the plaintiff. *Monadnock School Dist. v. Fitzwilliam,* 105 N.H. 487, 491-92, 203 A.2d 46, 49-50 (1964). Accordingly, we hold with that line of cases which follows the rule established in *Pittsburgh, C.C. & St. L.R. Co. v. Fink,* 250 U.S. 577, 581 (1919); *National Van Lines, Inc. v. Herbert,* 81 S.D. 633, 140 N.W.2d 36 (1966); *Lyon Van Lines, Inc. v. Ogden,* 503 S.W.2d 632 (Tex. Civ. App. 1973).

Defendant's last contention is that he is only liable to the extent that plaintiff is unable to recover from Randolph by filing a claim in bankruptcy. This argument is apparently based on the theory that defendant is only secondarily liable. But, both Randolph and the defendant are primarily liable for payment. While Randolph may be liable to the defendant through a separate agreement, so far as the plaintiff is concerned the obligations of Randolph and of the defendant to it are independent of one another and are both primary. *See Boston & M.R. Co. v. Hannaford Bros. Co.,* 144 Me. 306, 317-18, 68 A.2d 1, 7-8 (1949).

> *Exception sustained; plaintiff's motion for summary judgment granted; remanded.*

All concurred.