Elbert J. Kram, Bricker & Eckler, Columbus, Ohio, for plaintiff.

Joseph S. Streb, Columbus, Ohio, for defendant.

## CONSOLIDATED RAIL CORPORATION,
Plaintiff,

v.

## BRIGGS & TURIVAS, INC., Defendant and Third–Party Plaintiff,

v.

## SEATTLE & NORTH COAST RAILWAY COMPANY, Third–Party Defendant.

No. C–2–86–1562.

United States District Court,
S.D. Ohio, E.D.

Dec. 16, 1987.

## MEMORANDUM AND ORDER

HOLSCHUH, District Judge.

Plaintiff Consolidated Rail Corporation ("Conrail") brought this action to recover from defendant Briggs & Turivas, Inc. shipping charges for transport of two railroad dump cars from third-party defendant Seattle & North Coast Railroad Company ("Seattle & North Coast") to Briggs & Turivas. The matter is before the court on Conrail's and Briggs & Turivas' cross-motions for summary judgment.[1]

## I. FACTS

In July 1983 Briggs & Turivas leased two railway dump cars to Seattle & North Coast, which made only about two payments under the lease/purchase agreement. Briggs & Turivas accordingly sued Seattle & North Coast in Washington state

---

1. Briggs & Turivas' motion is styled as a motion to dismiss "pursuant to Fed.R.Civ.P. 12 and 56," and the supporting memoranda treat the motion as a motion to dismiss or in the alternative for summary judgment. As the motion is supported by an affidavit and other documentation, this Court treats the motion as being for summary judgment. Fed.R.Civ.P. 12(b).

court. That action ended in a stipulation for dismissal, the terms of which required Seattle & North Coast to return the cars by rail, "all freight charges to be prepaid ... by the defendant [Seattle & North Coast]."

Seattle & North Coast shipped the dump cars to Briggs & Turivas pursuant to a bill of lading.[2] In violation of its agreement with Briggs & Turivas, Seattle & North Coast did not prepay the shipping charges, nor was the bill of lading marked "to be prepaid" in the space provided. Seattle & North Coast did not execute the nonrecourse clause on the bill of lading. Conrail did not demand payment before delivering the cars to Briggs and Turivas, which apparently accepted delivery.

In June 1984 Seattle & North Coast filed for Chapter Eleven bankruptcy. Conrail began in July 1984 to seek payment for the shipping charges in the amount of $5,352.12 from Briggs & Turivas, finally commencing this action in December 1986.

## II. DISCUSSION

Fed.R.Civ.P. 56(c) provides:

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

"[T]his standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed. 2d 202 (1986) (emphasis in original); *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir.1984).

Summary judgment will not lie if the dispute about a material fact is genuine; "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party," *Anderson*, 106 S.Ct. at 2510. The purpose of the procedure is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried. *Lashlee v. Sumner*, 570 F.2d 107, 111 (6th Cir.1978). Therefore, summary judgment will be granted "only where the moving party is entitled to judgment as a matter of law, where it is quite clear what the truth is, ... [and where] no genuine issue remains for trial, ... [for] the purpose of the rule is not to cut litigants off from their right of trial by jury if they really have issues to try." *Poller v. Columbia Broadcasting Sys.*, 368 U.S. 464, 467, 82 S.Ct. 486, 488, 7 L.Ed.2d 458 (1962); *accord, County of Oakland v. City of Berkley*, 742 F.2d 289, 297 (6th Cir.1984).

In making this inquiry the standard to be applied by the Court mirrors the standard for a directed verdict. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265; *Anderson*, 106 S.Ct. at 2511.

The primary difference between the two motions is procedural: summary judgment motions are usually made before trial and decided on documentary evidence, while directed verdict motions are made at trial and decided on the evidence that has been admitted. *Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 745, n. 11 [103 S.Ct. 2161, 2171 n. 11, 76 L.Ed.2d 277] (1983). In essence, though, the inquiry under each is the same: whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.

*Anderson*, 106 S.Ct. at 2512. Accordingly, although summary judgment should be cautiously invoked, it is an integral part of the Federal Rules which are designed "to secure the just, speedy and inexpensive determination of every action." *Celotex*, 106 S.Ct. at 2555 (quoting Fed.R.Civ.P. 1).

In a motion for summary judgment the moving party bears the "burden of show-

2. The bill of lading was delivered to the originating carrier, The Burlington Northern Railroad, which is not a party to this action. The parties do not dispute the applicability of the bill of lading to Conrail, the transferee carrier.

ing the absence of a genuine issue as to any material fact, and for these purposes, the [evidence submitted] must be viewed in the light most favorable to the opposing party." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed. 2d 142 (1970) (footnote omitted); *accord, Adams v. Union Carbide Corp.*, 737 F.2d 1453, 1455–56 (6th Cir.1984), *cert. denied*, 469 U.S. 1062, 105 S.Ct. 545, 83 L.Ed.2d 432 (1985). Inferences to be drawn from the underlying facts contained in such materials must be considered in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Watkins v. Northwestern Ohio Tractor Pullers Ass'n.*, 630 F.2d 1155, 1158 (6th Cir.1980). Additionally, "unexplained gaps" in materials submitted by the moving party, if pertinent to material issues of fact, justify denial of a motion for summary judgment. *Adickes*, 398 U.S. at 157–60, 90 S.Ct. at 1608–09; *Smith v. Hudson*, 600 F.2d 60, 65 (6th Cir.), *cert. dismissed*, 444 U.S. 986, 100 S.Ct. 495, 62 L.Ed.2d 415 (1979).

If the moving party meets its burden and adequate time for discovery has been provided, summary judgment is appropriate if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex*, 106 S.Ct. at 2553. The existence of a mere scintilla of evidence in support of the opposing party's position is insufficient; there must be evidence on which the jury could reasonably find for the opposing party. *Anderson*, 106 S.Ct. at 2511. As is provided in Fed.R. Civ.P. 56(e):

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

Thus, "a party cannot rest on the allegations contained in his ... [pleadings] in opposition to a properly supported motion for summary judgment against him." *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 289, 88 S.Ct. 1575, 1592, 20 L.Ed. 2d 569 (1968).

With this standard in mind, the Court will now proceed to consider the pending motion.

The dump cars were shipped pursuant to a bill of lading which incorporated the terms and conditions of the Uniform Domestic Straight Bill of Lading. The Supreme Court has stated that a bill of lading contains the entire contract fixing the liabilities of the carrier and the consignees. *See Louisville & N.R.R. v. Central Iron & Coal Co.*, 265 U.S. 59, 44 S.Ct. 441, 68 L.Ed. 900 (1924); *Missouri, K. & T. Ry. v. Ward*, 244 U.S. 383, 37 S.Ct. 617, 61 L.Ed. 1213 (1917); *see also United States v. Louisville & N. R.R.*, 221 F.2d 698 (6th Cir.1955).

If the nonrecourse clause is not signed by the consignor, the consignor remains liable to the carrier for freight charges. If delivery is made without payment, the consignee is also liable. *Illinois Steel Co. v. Baltimore & O.R.R.*, 320 U.S. 508, 513, 64 S.Ct. 322, 325, 88 L.Ed. 259 (1944); *Pittsburgh, C., C. & St. L. Ry. v. Fink*, 250 U.S. 577, 40 S.Ct. 27, 63 L.Ed. 1151 (1919). If a shipment is accepted, the consignee is liable as a matter of law for the freight charges, even if payment is not demanded at the time of delivery. *Central Iron & Coal*, 265 U.S. at 70, 44 S.Ct. at 444, 49 U.S.C. § 10744.

Briggs & Turivas contends that its contract with Seattle & North Coast, as set forth in the stipulation for dismissal, establishes conclusively that Seattle & North Coast alone is liable for shipping charges. Conrail, however, was neither a party to that agreement nor in privity with a party. Courts have refused to allow private contracts between consignors and consignees to override the provisions of federal law. *See, e.g., American Red Ball Transit Co. v. McCarthy*, 114 N.H. 514, 323 A.2d 897

(1974), *cert. denied*, 420 U.S. 930, 95 S.Ct. 1131, 43 L.Ed.2d 401 (1975); *Pennsylvania R.R. v. L.N. White & Co.*, 280 A.D. 587, 116 N.Y.S.2d 361 (1952), *aff'd*, 305 N.Y. 801, 113 N.E.2d 553 (1953); *see also Empire Petroleum Co. v. Sinclair Pipeline Co.*, 282 F.2d 913, 916 (10th Cir.1960). That Briggs & Turivas may have a cause of action against Seattle & North Coast does not affect Briggs & Turivas' primary liability to Conrail under 49 U.S.C. § 10744.

Briggs & Turivas relies upon the decision of the Second Circuit in *In re Roll Form Products, Inc.*, 662 F.2d 150 (2d Cir.1981), for support of its argument that its agreement with Seattle & North Coast shields it from liability to Conrail. In that case, the consignor, Roll Form, customarily billed its customer-consignees in advance for freight costs and arranged for shipping. All bills of lading were marked "prepaid." As part of the arrangement, the carriers extended credit to Roll Form. The *Roll Form* court "proceed[ed] upon the assumption that all *parties to this action* [including the carrier] were contractually bound to an arrangement which provided for the customer-consignees to pay freight charges exclusively to Roll Form, and for the carriers to look solely to Roll Form for payment." *Id.* at 151–52 (emphasis added). When Roll Form eventually filed in bankruptcy, it owed over $48,000 in freight charges. Some of the carriers it used filed claims in bankruptcy court, but, being unsatisfied, attempted to collect from the consignees. Roll Form sued to enjoin the collections. The Second Circuit held that the statutory liability of consignees set forth in section 10744 was not intended to be absolute liability, and that, absent any discriminatory practices, the parties were free to allocate freight charges as they wished. *Id.* at 154.

The facts of the present case are readily distinguishable from those in *Roll Form*. Most important, the carrier in *Roll Form*, not just the consignor and consignee, was assumed by the court for the purpose of deciding the question before it to be a party to and bound by the agreement allocating liability for shipping charges. Conrail was not a party or privy to the agreement between Briggs & Turivas and Se-

attle & North Coast; indeed, it is not alleged Conrail even knew of the arrangement. The *Roll Form* court specifically stressed its reliance upon its assumption that the carrier was a party to the agreement, stating: "Of course, where parties fail to agree ... the Interstate Commerce Act will bind the consignee to pay freight charges to the carrier on goods he accepts, this obligation being independent of the consignor's own obligations," 662 F.2d at 154, and remanded the case to the bankruptcy court for a determination of the parties' (including the carrier's) contractual obligations. *Id.* at 155.

In addition, the bill of lading in the present case was not marked "prepaid," as were the bills of lading in *Roll Form*. Briggs & Turivas, upon seeing the blank "prepaid" box, could have refused delivery and avoided liability; it did not do so. As noted above, Conrail's delivery of the cars without first demanding and obtaining payment did not relieve Briggs & Turivas of liability. *See Southern Pac. Transp. Co. v. Commercial Metals Co.*, 456 U.S. 336, 344–45, 102 S.Ct. 1815, 1821, 72 L.Ed.2d 114 (1982); 49 U.S.C. § 10743(b)(1); 49 C.F.R. § 1320.2(a)(i) and (ii).

Finally, Briggs & Turivas contends that "where a defendant would have to pay twice, there is no liability to the carrier," citing the New Hampshire Supreme Court decision in *Red Ball, supra*. In the present case, Briggs & Turivas maintains that its dismissal of its lawsuit against Seattle & North Coast constituted the giving of value. Even if so, however, this Court does not agree that the possibility of double payment automatically bars liability, nor does it read *Red Ball* as so stating. Briggs & Turivas is free to proceed against Seattle & North Coast for any breach of the settlement agreement. That Seattle & North Coast has sought relief under Chapter Eleven is irrelevant. *See Roll Form*, 662 F.2d at 154; *In re Penn–Dixie Steel Corp.*, 6 B.R. 817, 821–22 (S.D.N.Y.1980).

Accordingly, there being no genuine issue of material fact remaining, and this Court being of the opinion that upon the record before it plaintiff Conrail is entitled

to judgment as a matter of law, Briggs & Turivas' motion for summary judgment is DENIED and Conrail's cross-motion for summary judgment in the amount of five thousand three hundred fifty-two dollars and twelve cents ($5,352.12) plus interest is GRANTED.

IT IS SO ORDERED.