**SOUTHERN PACIFIC TRANSPORTATION COMPANY, a Corporation, Appellee,**

**v.**

**CAMPBELL SOUP COMPANY, a Corporation, Appellant.**

**No. 71–1390.**

United States Court of Appeals, Eighth Circuit.

Feb. 22, 1972.

David A. Svoboda, Omaha, Neb., for appellant.

Raymond E. McGrath, Omaha, Neb., for appellee.

Before BRIGHT and ROSS, Circuit Judges, and WANGELIN, District Judge.*

BRIGHT, Circuit Judge.

Appellee, Southern Pacific Transportation Company (Railroad), delivered to appellant, Campbell Soup Company, four separate lots of frozen fowl under uniform straight bills of lading. Each bill of lading carried the notation that freight charges were to be prepaid. In the trade, this notation signifies that freight charges will be paid by the shipper. Upon receipt of each shipment, Campbell paid the shipper, Mission Poultry Company, for the cost of the merchandise plus freight charges. The Railroad attempted to collect its freight charges from the shipper, but, when it was unable to make collection, the Railroad brought this action against Campbell for the unpaid freight bills. Campbell pleaded an estoppel in bar to the Railroad's claims. The district court rejected this proffered defense and entered summary judgment for the Railroad. Campbell prosecutes this timely appeal. Federal jurisdiction rests on 28 U.S.C. § 1337.

In rejecting Campbell's estoppel defense, the district court adopted the theory that Campbell became obligated to pay the freight charges when it accepted the goods from the Railroad, notwithstanding Campbell's reliance, if any, upon the prepaid freight notation marked on the bills of lading. Although noting that "the equities lie with the defendant," the district court felt that this court's decision in Central Warehouse Co. v. Chicago, R.I. & P.Ry., 20 F.2d 828 (8th Cir. 1927), compelled this result. In this appeal, Campbell questions the continued vitality of the *Central Warehouse* decision, suggesting that the holding there should be overruled or, alternatively, not applied to the facts of the present controversy.

In *Central Warehouse,* a wholesaler shipped a carload of sugar under an order bill of lading, which later was endorsed to Central Warehouse Company. By mistake, the initiating railroad carrier noted on the bill that freight charges were to be prepaid. The Rock Island Railroad, a subsequent carrier, delivered the freight to Central Warehouse, which obtained delivery by surrendering the bill of lading. No payment for freight charges was demanded by the Rock Island Railroad at the time of delivery. Thereafter, Central Warehouse sold the sugar for the account of the wholesaler and, relying upon the prepaid freight notation, remitted the proceeds of the sale, less commission, to the wholesaler. Upon discovering that the wholesaler was insolvent, the Rock Island Railroad brought suit against Central Warehouse and recovered a judgment for the amount of the freight charges. This court affirmed, observing that the Interstate Commerce Act of 1887,[1] as amended by section 2 of the Hepburn Act of 1906[2] (49 U.S.C. § 6(7)), was designed to eliminate all forms of rate discrimination on interstate shipments. The court reasoned that the congressional purpose would be defeated if Central Warehouse were allowed to escape its obligation to pay the freight charges simply because the initiating carrier mistakenly marked the bill prepaid. In rejecting the argument that the railroad should be estopped from recovering, the court said:

> The initial carrier in this case by mistake caused the bill of lading to indicate that the freight charges had been paid by the consignor. The duty imposed upon the carrier by the act applicable to interstate shipments was to collect the lawful rate. This obligation was not only in its own interest, but in the interest of the public. It is not permitted to escape its duty by an oversight and thereby effect a discrimination. It is not within its

---

* Sitting by designation.

1. Act of Feb. 4, 1887, ch. 104, 24 Stat. 379.

2. Act of June 29, 1906, ch. 3591, § 2, 34 Stat. 586.

power to so conduct itself that the plain terms of the statute will amount to nothing. The unintentional act of the [initiating] carrier does not estop [Rock Island Railroad] from demanding payment of the lawful charge. [20 F.2d at 829–30]

The court found support for its conclusion in two earlier Supreme Court decisions, Pittsburgh, C., C. & St. L. Ry. v. Fink, 250 U.S. 577, 40 S.Ct. 27, 63 L.Ed. 1151 (1919), and New York Cent. & Hudson River Ry. v. York & Whitney Co., 256 U.S. 406, 41 S.Ct. 509, 65 L.Ed. 1016 (1921).[3] In *Fink, supra*, the consignee of a shipment of goods paid the carrier $15 in freight charges, the amount specified on the bill of lading. The carrier later discovered that the proper freight charge should have been $30. The Court permitted the carrier to recover the $15 undercharge from the consignee, reasoning that the consignee had assumed the obligation to pay the proper freight charge when he accepted the shipment of goods. The Court rejected the consignee's estoppel defense, noting: "Estoppel could not become the means of successfully avoiding the requirement of [49 U.S.C. § 6(7)] as to equal rates . . . ." 250 U.S. at 583, 40 S.Ct. at 28. A similar factual situation was presented in *York & Whitney, supra*. The Court, following the *Fink* rationale, refused to allow the consignee to raise an estoppel defense to the carrier's suit for recovery of a freight undercharge.

In this case, the Railroad grounds its claim for recovery on the provisions of 49 U.S.C. § 6(7).[4] Relying on *Fink* and its progeny, the Railroad argues that, regardless of equitable considerations, § 6(7) mandates that it recover the full amount of its freight charges from Campbell. We think this argument reads too much into the Supreme Court's effort in *Fink* to implement the anti-discriminatory purpose of that statute.

In *Fink*, the court clearly expressed its reason for rejecting the consignee's estoppel argument: "Estoppel could not become the means of successfully avoiding the requirement of [49 U.S.C. § 6(7)] as to equal rates . . . ." 250 U.S. at 583, 40 S.Ct. at 28. Since the consignee in *Fink* had not paid the full freight charge, the purpose of § 6(7) would have been defeated if the Court had accepted the consignee's estoppel defense. It is plain that the Court intended to preclude consignees from defeating the anti-discriminatory purpose of § 6(7) by invoking the defense of estoppel. We think it is equally plain, however, that the Court did not intend to impose a species of absolute liability upon consignees by ruling out the defense of estoppel under all circumstances.

In *Central Warehouse, supra*, this court adopted fully the reasoning of the *Fink* decision. Although *Central Warehouse* presented a slightly different factual question, this court treated the carrier's mistake in marking the bill of lading prepaid as the equivalent of the car-

---

3. The *Central Warehouse* court also cited the Supreme Court's decision in Louisville & N. R. R. v. Central Iron & Coal Co., 265 U.S. 59, 44 S.Ct. 441, 68 L.Ed. 900 (1924), as support for its conclusion. Although the question of a consignee's liability for unpaid freight charges was not directly in issue in that case, the Supreme Court discussed its earlier ruling in Pittsburgh, C., C. & St. L. Ry. v. Fink, 250 U.S. 577, 40 S.Ct. 27, 63 L.Ed. 1151 (1919). The *Central Warehouse* court cited this discussion of the *Fink* rule.

4. 49 U.S.C. § 6(7) provides in pertinent part:

[No carrier shall] charge or demand or collect or receive a greater or less or different compensation for such transportation of passengers or property, or for any service in connection therewith, between the points named in such tariffs than the rates, fares, and charges which are specified in the tariff filed and in effect at the time; nor shall any carrier refund or remit in any manner or by any device any portion of the rates, fares, and charges so specified, nor extend to any shipper or person any privileges or facilities in the transportation of passengers or property, except such as are specified in such tariffs.

rier's mistake in calculating the freight charge in *Fink*. And, applying the *Fink* reasoning, the court held that the consignee could not be permitted to defeat the anti-discriminatory purpose of § 6(7) by invoking the defense of estoppel. We find no indication in the *Central Warehouse* opinion that the court intended to preclude consignees from raising the defense of estoppel under all circumstances.

 We think that the crucial question in this case is whether judicial recognition of Campbell's estoppel defense will contravene the anti-discriminatory purpose of § 6(7). We answer this question negatively and find substantial support for our conclusion. *See* Consolidated Freightways Corp. v. Admiral Corp., 442 F.2d 56 (7th Cir. 1971); Davis v. Akron Feed & Milling Co., 296 F. 675 (6th Cir. 1924); Farrell Lines, Inc. v. Titan Industrial Corp., 306 F.Supp. 1348 (S.D.N.Y.), aff'd 419 F.2d 835 (2d Cir. 1969), cert. denied, 397 U. S. 1042, 90 S.Ct. 1365, 25 L.Ed.2d 653 (1970); Missouri Pacific R.R. v. National Milling Co., 276 F.Supp. 367 (D. N.J.1967), aff'd 409 F.2d 882 (3d Cir. 1969). We discern no conflict here between recognition of Campbell's estoppel defense and the anti-discriminatory purpose of § 6(7). In this case, the Railroad delivered shipments to Campbell under bills of lading which carried the notation that freight charges were to be prepaid. The Railroad concedes that this notation signified that it would look to the shipper for payment of the freight charges. Campbell asserts that, in reliance upon the representation that freight charges would be paid by the shipper, it reimbursed the shipper for the full amount of the freight charges. We hold that a consignee of goods who has paid the amount of the freight charges to the consignor may raise the defense of estoppel against a carrier's claim for freight charges. This rule will not erode the purpose underlying § 6(7) as long as the grounds for estoppel do not serve directly or indirectly as a cover for freight rate discrimination.

The district court has not yet passed upon the merits of Campbell's estoppel claim. Accordingly, we vacate the judgment and remand this case to the district court for further proceedings in conformity with this opinion. The burden of establishing the elements of estoppel rests with Campbell.

Reversed and remanded.