[No. 1753-1.    Division One.    July 23, 1973.]

LYON VAN LINES, INC., *Appellant*, v. ALONZO P. COLE *et al.*, *Respondents.*

*Steinberg & Steinberg* and *Quentin Steinberg,* for appellant.

*Robert W. Kitto,* for respondents.

SWANSON, C.J.—Does the Interstate Commerce Act, 49 U.S.C. § 323, place absolute liability for payment of a carrier's transportation charges upon the consignee-owner of the goods shipped notwithstanding an agreement by a third party to pay such charges? The trial judge determined that it does not. We affirm.

The undisputed findings of fact by the trial judge indicate that the operative facts on this appeal are as follows: During the first part of August, 1970, the respondent Alonzo Cole, who at the time made his home in San Jose, California, commenced employment with Northwest Data Systems, Inc. (Northwest Data), in Everett, Washington. Prior to accepting such employment, Cole had secured the agreement of Northwest Data to pay all expenses involved

in moving his household goods from San Jose to Everett. At Northwest Data's request, Mrs. Cole secured the estimates of two moving companies, one of which was the appellant Lyon Van Lines, Inc. (Lyon). Lyon presented the lowest estimate, and Mrs. Cole advised Lyon's representative that Northwest Data would be responsible for the moving costs.

Lyon made arrangements with Northwest Data with respect to the moving of respondents' goods, and the actual move took place between August 24 and August 28, 1970. On August 24, after the goods had been packaged but prior to moving them, Lyon's representative presented a "Uniform Household Goods Bill of Lading and Freight Bill" (bill of lading) to Mrs. Cole for her signature. Upon delivery of the goods in Everett, the same bill of lading was again presented to Mrs. Cole for her signature. On both occasions, she signed as requested, but at no time did she read the terms of the document which reflected the total charges made by Lyon for the move and indicated that the charges were to be billed to Northwest Data. Mr. Cole continued his employment with Northwest Data until November, 1970, although he learned in the latter part of October that the company was in financial difficulty.

In January, 1971, Lyon notified the respondents Cole that Northwest Data was unable to pay the bill for the shipment of the Cole's household goods and that it therefore sought payment from the Coles. When the Coles refused to pay, Lyon brought the lawsuit which is the subject of this appeal. Default judgment was entered against Northwest Data, but the complaint against the respondents Cole was dismissed with prejudice. This appeal followed.

Appellant Lyon advances two basic arguments in support of its contention that the respondents Cole are liable to it for the freight charges incurred in the shipment of the Cole's household goods in August, 1970, notwithstanding the fact that Northwest Data had agreed to pay such charges: first, that the Coles are absolutely liable as consignees accepting goods shipped in interstate commerce under the provisions of the Interstate Commerce Act, 49 U.S.C. §

323, and, second, that the Coles are contractually liable for such charges by virtue of Mrs. Cole's signature on Lyon's bill of lading.

With respect to the first argument, appellant directs us to substantial authority in support of the proposition that the Interstate Commerce Act, including the section relating to motor carriers, codified as 49 U.S.C. § 323[1] as well as earlier and related legislation concerning railroad carriers, imposes

[1]"No common carrier by motor vehicle shall deliver or relinquish possession at destination of any freight transported by it in interstate or foreign commerce until all tariff rates and charges thereon have been paid, except under such rules and regulations as the Commission may from time to time prescribe to govern the settlement of all such rates and charges, including rules and regulations for weekly or monthly settlement, and to prevent unjust discrimination or undue preference or prejudice: *Provided,* That the provisions of this paragraph shall not be construed to prohibit any such carrier from extending credit in connection with rates and charges on freight transported for the United States, for any department, bureau, or agency thereof, or for any State or Territory, or political subdivision thereof, or for the District of Columbia. Where any common carrier by motor vehicle is instructed by a shipper or consignor to deliver property transported by such carrier to a consignee other than the shipper or consignor, such consignee shall not be legally liable for transportation charges in respect of the transportation of such property (beyond those billed against him at the time of delivery for which he is otherwise liable) which may be found to be due after the property has been delivered to him, if the consignee (a) is an agent only and had no beneficial title in the property, and (b) prior to delivery of the property has notified the delivering carrier in writing of the fact of such agency and absence of beneficial title, and, in the case of shipment reconsigned or diverted to a point other than that specified in the original bill of lading, has also notified the delivering carrier in writing of the name and address of the beneficial owner of the property. In such cases the shipper or consignor, or, in the case of a shipment so reconsigned or diverted, the beneficial owner shall be liable for such additional charges, irrespective of any provisions to the contrary in the bill of lading or in the contract under which the shipment was made. If the consignee has given to the carrier erroneous information as to who is the beneficial owner, such consignee shall himself be liable for such additional charges, notwithstanding the foregoing provisions of this paragraph. On shipments reconsigned or diverted by an agent who has furnished the carrier with a notice of agency and the proper name and address of the beneficial owner, and where such shipments are refused or abandoned at ultimate destination, the said beneficial owner shall be liable for all legally applicable charges in connection therewith." 49 U.S.C. § 323.

absolute liability upon the consignee for all charges arising out of the shipment of goods notwithstanding the fact that the consignee may have relied upon a third party to pay such charges. *Central Warehouse Co. v. Chicago R.I. & P. Ry.*, 20 F.2d 828 (8th Cir. 1927); *Great N. Ry. v. Hyder*, 279 F. 783 (W.D. Wash. 1922); *National Van Lines, Inc. v. Herbert*, 81 S.D. 633, 140 N.W.2d 36 (1966); *Aero Mayflower Transit Co. v. Hankey*, 148 So. 2d 465 (La. App. 1963); *Aero Mayflower Transit Co. v. Rae*, 203 Misc. 801, 118 N.Y.S.2d 895 (1952). *See generally* 13 Am. Jur. 2d *Carriers* § 473 (1964); 13 C.J.S. *Carriers* §§ 316, 393 (1939).

The holdings in the cases relied upon by appellant are generally linked to a Congressional purpose in enacting legislation regulating interstate commerce "to eliminate rebates, concessions or discriminations from the handling of commerce, to the end that persons and places might carry on their activities on an equal basis." *Union Pac. R.R. v. United States*, 313 U.S. 450, 461, 85 L. Ed. 1453, 61 S. Ct. 1064 (1941); *see also United States v. Koenig Coal Co.*, 270 U.S. 512, 70 L. Ed. 709, 46 S. Ct. 392 (1925); *Aero Mayflower Transit Co. v. Rae, supra.* Moreover, the rule imposing what amounts to absolute liability for shipping costs upon the consignee may be traced to early federal cases holding, under the factual circumstances therein presented, that the antidiscriminatory purpose of the interstate commerce legislation requires a presumption that the consignee knows the law, including that setting uniform shipping rates, so that he may be held liable to pay the full legal charge in the event of an undercharge through contract or mistake. *Pittsburgh, C., C. & St. L. Ry. v. Fink*, 250 U.S. 577, 63 L. Ed. 1151, 40 S. Ct. 27 (1919); *New York Cent. R.R. v. York & Whitney Co.*, 256 U.S. 406, 65 L. Ed. 1016, 41 S. Ct. 509 (1921); *Louisville & N.R.R. v. Central Iron & Coal Co.*, 265 U.S. 59, 68 L. Ed. 900, 44 S. Ct. 441 (1924). In the cases cited, the Supreme Court rejected the argument of the consignee that the carrier was estopped from collecting the legal rate, stating in *Fink*, 250 U.S. at page 583, "Estoppel could not become the means of success-

fully avoiding the requirement of the act as to equal rates, in violation of the provisions of the statute."

In the case at bar, the respondents Cole argue that Lyon is essentially estopped from looking to them for the freight charges because of the understanding of the parties that Northwest Data would be responsible for such charges. Respondents urge that the holdings in *Southern Pac. Transp. Co. v. Campbell Soup Co.,* 455 F.2d 1219 (8th Cir. 1972) and *Consolidated Freightways Corp. v. Admiral Corp.,* 442 F.2d 56 (7th Cir. 1971), suggest the rule properly applicable to the circumstances of this appeal. Specifically, respondents contend that the trial court correctly relied upon *Consolidated Freightways* in determining that the Interstate Commerce Act does not place absolute liability upon a consignee of goods, and any contractual liability of the consignee, express or implied, must be determined on the facts of each particular case. We agree.

In *Consolidated Freightways,* the court offered a distinction between the imposition of liability for freight charges and the furtherance of the antidiscriminatory purposes of 49 U.S.C. § 323. The court noted that in *Fink* and its progeny, the Supreme Court ascertained which party was liable for the freight charges independently of its consideration of whether the statutory requirements that the full tariff rate be charged were met. In other words, the concern manifested in *Fink* was to insure that *equal rates* at the full legal level were charged by all common carriers, rather than to determine *who* was to pay such charges in every case. As the court, in *Consolidated Freightways,* referring to section 223 of the motor carrier act (49 U.S.C. § 323), stated at page 62:

> Congress left the initial determination of a party's liability for freight charges to express contractual agreement or implication of law. [Citation omitted.] So long as payment of the full tariff charges may be demanded from some party, the anti-discrimination policy of the Section is satisfied. Congress did not undertake to settle all issues of collection with the enactment of Section 223. Nor did Congress intend to fashion a sword to insure collection in

every instance and a shield to insulate the carrier from the legal consequences of otherwise negligent or inequitable conduct.

. . . The crucial question is not whether estoppel is urged as a bar to collection of the tariff rate as such, but whether the use of estoppel to prevent recovery on the facts of the particular case contradicts the statutory policy of Section 223 to curb discriminatory treatment of shippers.

*See also Southern Pac. Transp. Co. v. Campbell Soup Co., supra.*

Appellant seeks to distinguish *Consolidated Freightways* on its facts, pointing out that in that case the consignee had already reimbursed the consignor for the shipping costs on the carrier's representation that the shipment was prepaid and hence a double payment would be involved if the consignee were held to be absolutely liable to the carrier. Appellant further distinguishes *Consolidated Freightways* on the ground that the carrier, without notice to the consignee, had illegally extended credit to the consignor and thus increased the risk of loss. We note that the *Campbell Soup* case also involved a potential double payment. Assuming arguendo such factual distinctions exist,[2] the overriding

---

[2]In the case at bar, it is undisputed that respondent Cole secured the agreement of Northwest Data to pay the freight costs here in question as one of the terms of his employment contract; consequently, the shipping costs could be considered to be partial compensation to Cole for the work he performed for Northwest Data, and Cole would effectively be making a double payment if he were held liable for shipping costs which he had already earned. Moreover, there is substantial evidence in the record to support the trial court's conclusion of law No. 4, disputed by appellant, to the effect that appellant Lyon contributed to the risk of loss. *See* 49 C.F.R. § 1322.1 (1972). Conclusion of law No. 4 states:

Under the facts of this case, the plaintiff affirmatively contributed to its failure to collect the charges due by failing to notify the defendants Cole until early January, 1971 that the charges had not been paid by Northwest Data Systems, Inc. By that time Northwest Data Systems was unable to meet any of its obligations, and the defendants Cole were unable to protect their own interest.

Conclusion of law No. 4 may be deemed a finding of fact and being supported by substantial evidence, it is binding upon this court. *See Ferree v. Doric Co.*, 62 Wn.2d 561, 383 P.2d 900 (1963).

issue in *Consolidated Freightways, Campbell Soup,* and the instant case is whether a determination that the consignee should not be held absolutely liable for the shipping costs will contravene the antidiscriminatory purpose of 49 U.S.C. § 323. It is undisputed that Northwest Data agreed to be responsible for payment of the shipping costs, and default judgment has been entered against it. Thus a party exists from whom full payment of the charges may be demanded and this fact alone is sufficient to satisfy the requirements of 49 U.S.C. § 323. Under such circumstances, we hold that it would be improper to impose absolute liability upon the consignee respondents Cole. To the extent authority exists to the contrary, we decline to follow it because we have concluded, based upon the reasoning in *Consolidated Freightways* and *Campbell Soup,* that such authority misconstrues the holdings of the Supreme Court in *Fink* and similar cases.

Having thus determined that the trial court's judgment does not contravene the Congressional purpose expressed in 49 U.S.C. § 323, we turn to appellant Lyon's second basic argument which is that the respondents Cole are nevertheless contractually liable to it for payment of the shipping costs here in question because of Mrs. Cole's signature on Lyon's bill of lading. In this regard, the trial court's finding of fact No. 7, to which the appellant assigns error, is dispositive of the issue and reads as follows: "At no time did either of the defendants Cole agree to pay any of the charges made by the plaintiff." We have carefully reviewed the record and have concluded that this finding is supported by substantial evidence, and therefore it is a verity for purposes of this appeal.

The record is such that no lengthy analysis is required to reach the conclusion that the parties understood at all times that Northwest Data was to be fully responsible for the shipping costs, and that there was never any intention on the part of the respondents Cole to enter into a contract with Lyon, and Lyon so understood. The bill of lading indicates on its face that all charges were to be made to

Northwest Data, and Mrs. Cole's signatures reflect little more than acknowledgments initially releasing and subsequently receiving the goods. Although, as appellant points out, Mr. Cole is listed on the bill of lading as "shipper" and a provision on the reverse side of the document recites that the shipper shall be "liable for any and all charges applicable . . ." there is substantial evidence to support the trial judge's findings, which in turn support his conclusion of law No. 3 stating in relevant part:

> Under the facts of this case there is no contract between the plaintiff and the defendants Cole for the payment of subject charges. There was a definite understanding to the contrary, . . .

We conclude that the trial judge correctly held that there is no contractual liability on the part of the respondents Cole to pay the shipping charges here in question. Under such circumstances, and in view of our holding on the issue of absolute liability, we do not reach the merits of the respondents' contention that the appellant is otherwise estopped from looking to them for payment of such charges.

The judgment is affirmed.

JAMES and WILLIAMS, JJ., concur.

Petition for rehearing denied September 24, 1973.