312

CENTRE CARRIERS, INC., Appellant, *v.* THOMAS D. BARKER et al., Respondents.

Fourth Department, April 11, 1974.

*Alderman, Alderman, Samuels & Schepp (Bernard Samuels* of counsel), for appellant.

*Malcolm N. Fleming* for respondents.

CARDAMONE, J. Plaintiff appeals from an order denying its motion for summary judgment and granting defendant's cross motion for summary judgment dismissing plaintiff's complaint.

The defendant, Thomas Barker, was an employee of General Housing Industries, Inc., in the State of Pennsylvania and in the course of his employment arrangements were made to transfer him to Syracuse, New York. Barker agreed with his employer that the employer would pay freight charges incurred in moving the Barkers' household goods to Syracuse. In accordance with that agreement, the employer issued an order to the plaintiff Centre Carriers, Inc. on June 23, 1972 based upon the plaintiff's estimated costs for the move. On July 3, 1972 the Barkers' household goods were loaded and shipped to Syracuse and delivered to the Barkers' new home on July 10, 1972. The defendant, Janet Barker, acknowledged receipt of them and signed a uniform household goods bill of lading and freight bill as " shipper " and " consignee ". On July 13, 1972 plaintiff billed the employer for the freight costs. The carrier was never paid because in the meantime the employer had gone bankrupt and the Barkers refused to pay on the ground that freight charges were a liability of the employer. Centre Carriers then commenced this action to recover from the Barkers for the freight charges incurred in the shipment of the Barkers' goods in July, 1972.

The plaintiff carrier does not contend that the Barkers are contractually liable for the shipping charges by virtue of Mrs. Barker's signature on carrier's bill of lading. Rather, the carrier argues that the Barkers are absolutely liable as consignees accepting goods shipped in interstate commerce under the provisions of the Interstate Commerce Act (U. S. Code, tit. 49, § 323). The question thus presented is whether an employee-consignee of freight shipped in interstate commerce may be held responsible to the carrier for freight charges where the consignee's employer made arrangements with the carrier for the shipment and agreed with its employee and the carrier to be responsible for the charges.

The question must be considered under Federal law, which governs the area of interstate commerce (*Airborne Frgt. Corp.* v. *Irving Trust Co.*, 26 A D 2d 507). That law has strictly enforced the public policy set forth in the Interstate Commerce Act whose purpose is to end discriminatory practices of carriers in making undercharges to favored shippers by prohibiting rate variations or rebates. Earlier Federal and New York cases premised upon this policy held broadly that if the carrier was unable to recover shipping charges from the shipper it must collect from the consignee who, upon acceptance of the

goods, became absolutely liable for them. There was seemingly no equitable estoppel available as a defense against the carrier (see, e.g., *New York Cent. R. R. Co.* v. *York & Whitney Co.*, 256 U. S. 406; *Pittsburgh, Cincinnati, Chicago & St. Louis Ry. Co.* v. *Fink*, 250 U. S. 577; *New York Cent. R. R. Co.* v. *Federal Sugar Refining Co.*, 235 N. Y. 182; see, also, *New York Cent. R. R. Co.* v. *Niagara Fruit Inds.*, 278 App. Div. 892). More recently courts of New York and other States as well as Federal courts have recognized that the carrier may be estopped from recovering under certain circumstances without violating the Interstate Commerce Act's nondiscrimination policy (see, e.g., *Southern Pacific Transp. Co.* v. *Campbell Soup Co.*, 455 F. 2d 1219; *Consolidated Freightways Corp. of Del.* v. *Admiral Corp.*, 442 F. 2d 56; *Airborne Frgt. Corp.* v. *Irving Trust Co., supra*; *Lyon Van Lines* v. *Cole*, 9 Wash. App. 382; *Aero Mayflower Tr. Co.* v. *Harpin*, 126 Ga. App. 72). As stated in *Consolidated Freightways Corp. of Del.* v. *Admiral* (*supra*, pp. 61, 62): " We discern nothing in the language or policies of section 223 to suggest that Congress intended to impose absolute liability upon a consignee for freight charges. Nor do we believe that the application of equitable estoppel against plaintiff's claim circumvents the policies of that section    *    *    *    The crucial question is not whether estoppel is urged as a bar to collection of the tariff rate as such, but whether the use of estoppel to prevent recovery on the facts of a particular case contradicts the statutory policy of section 223 to curb discriminatory treatment of shippers."

The cases which permit the defense of estoppel to be interposed in the carrier's suit against the consignee involve factual situations where either the carrier's own conduct has increased the likelihood that the charges will be uncollectible as against the shipper or where the consignee relying upon conduct by the carrier has paid the shipper for the freight charges and further payment would amount to double payment by the consignee. Typical of the first type of case are these cases relied upon by Special Term in granting summary judgment to the defendants dismissing carrier's complaint. In *Aero Mayflower Transit Co.* v. *Harbin* (*supra*) the carrier failed to bill or collect the charges within the time allotted therefor under rules promulgated by the Interstate Commerce Commission.[1] By the

---

1. The Rules of the Interstate Commerce Commission here applicable provide that the carrier must present its bill within 15 days of delivery and may not extend credit for a period in excess of 7 days thereafter (Code of Fed. Reg., tit. 49, §§ 1322.1 and 1322.3).

time the collection process was begun the defendant's employer, who had agreed to be responsible, had suffered financial reverses rendering it bankrupt and incapable of paying the carrier. Similarly, in *Consolidated Freightways Corp.* v. *Admiral Corp.* (*supra*), the carrier's credit extensions contributed substantially to its ultimate inability to recover payment from the shipper. While it appears that the carrier in the present case presented its bill in a timely manner, the record does not indicate whether there was an overextension of credit or other delay in attempting to collect the freight charges. Further, if there was an overextension or other delay we do not know from this record whether such resulted in an increase in the likelihood that the charges would be uncollectible from the employer. These present unresolved factual issues which preclude the granting of summary judgment on the basis relied upon by Special Term.

The second type of case involving an estoppel defense to the carrier's action against the consignee seeks to avoid a potential double payment by the consignee. Defendants strongly urge upon us the application of *Airborne Frgt. Corp.* v. *Irving Trust Co.* (26 A D 2d 507, *supra*), where it was held that an air carrier was not permitted to recover from a consignee because the consignee, relying upon the bill of lading marked "charges prepaid", paid all sums due including shipping charges to the consignor. In fact, the consignor had not paid the carrier and became insolvent. Noting that the consignee was being called upon to pay the charges twice, the Second Department stated (p. 510): "The spirit of uniformity of the application of rates is not violated when in fact the tariff charge has been paid. True, the carrier has failed to receive the payment, but the statute was not aimed to compel payment of the tariff twice, or in every instance to guarantee the carrier against loss." (See, also, *Southern Pacific Transp. Co.* v. *Campbell Soup Co.*, 455 F. 2d 1219, *supra*.) The defendants argue that the plaintiff carrier agreed to look to the employer for the payment and that they, the defendants, have already paid the employer by having relocated and if they must pay now it will effect a double payment. They analogize their relocation in reliance upon the employer's agreement to pay the freight charges with the consignee's payment to the shipper of ostensibly prepaid charges in *Airborne*.

We agree with the conclusion reached in *Airborne* but find it readily distinguishable in a significant aspect. In *Airborne* it was the carrier itself which delivered a bill of lading marked

"charges prepaid" to the consignee prompting it to pay the consignor in error and consequently, it was appropriate, as between the consignee and the carrier, that the latter should bear the loss. Here, there was no bill of lading incorrectly marked "prepaid" by the carrier. Here there was simply an understanding between the carrier, the employer and the employee that the employer would pay the shipping costs. Merely because the employer became unable to do so does not lead us to conclude that such understanding together with the employee's relocation relieves the employee of the obligation to pay the carrier. As previously noted, under the general rule the consignee upon receipt of the goods becomes obligated to pay freight charges (*Pittsburgh, Cincinnati, Chicago & St. Louis Ry. Co.* v. *Fink,* 250 U. S. 577, *supra*). We believe that this rule governs on the facts in this case.

Accordingly, the order insofar as it granted summary judgment to the defendants-respondents should be reversed and insofar as it denied summary judgment to the plaintiff-appellant should be affirmed.

WITMER, J. P., SIMONS, MAHONEY and GOLDMAN, JJ., concur.

Order insofar as it grants summary judgment to defendants unanimously reversed and motion denied, and otherwise order affirmed, without costs.