[No. 1292-3.   Division Three.   July 2, 1975.]

UNION PACIFIC RAILROAD COMPANY, *Appellant*, v. STADELMAN FRUIT, INC., *Respondent.*

*David L. Broom* and *Hamblen, Gilbert & Brooke, P.S.,* for appellant.

*Douglas A. Wilson* and *Wilson & Flower,* for respondent.

GREEN, J.—Plaintiff, Union Pacific Railroad Co., commenced this action to recover additional freight charges in the amount of $125.48 against the defendant, Stadelman

Fruit, Inc. Summary judgment was entered in favor of defendant and plaintiff appeals.

Two issues are presented: (1) Is the defense of estoppel available to a shipper in an action by a carrier to collect outstanding freight charges? and (2) If available, were the requisite elements of estoppel established? On the facts of this case, we answer both questions affirmatively.

This cause was presented to the trial court upon the following agreed facts.

1. On December 18, 1970, the plaintiff handled a prepaid shipment of pears for the defendant; said shipment was made from Hood River, Oregon, and was destined for Syracuse, New York.

2. The shipper requested on the Bill of Lading certain modified mechanical protective services in the event the temperature inside the freight car fell below 30°.

3. In fact, the temperature inside the freight car fell below 30° at one point, and the modified mechanical protective service was initiated.

4. The charges for such modified mechanical protective service, over and above the other freight charges involved in this shipment, were $125.48.

5. That in accordance with the practices of the trade, the defendant was billed for freight charges by the plaintiff within a reasonable time after the freight shipment was handled, and the defendant, in turn, charged the freight against the growers and promptly paid the statement of charges.

6. That the fruit in question was being handled by the defendant as a commission merchant and the accounting was made to the growers in connection with gross receipts and charges, within three (3) months from the time the freight shipment was handled.

7. The defendant has refused to pay any portion of said additional freight charges.

8. The billing for the additional freight charges was made by plaintiff to defendant on a date which was beyond the period within which such billings are ordinarily made by plaintiff railroad.

Plaintiff's uncontroverted affidavit states:

That more than two (2) years after the date of shipment and more than twenty-one months after the Defendant had settled with the growers, the Plaintiff initiated

an extra charge in connection with "modified mechanical protective service"; that said charge was not included in the original billing.

On this record, the trial court held that the plaintiff-carrier was estopped to recover the additional charges from the defendant-shipper.

With respect to the first issue, the carrier contends that estoppel cannot be used as a defense to the collection of interstate freight charges. This contention is premised upon the Interstate Commerce Act, 49 U.S.C. § 6(7),[1] under which a carrier is prohibited from charging less than the rates specified in published tariff schedules for any transportation services provided to its customers. This section guarantees that all persons will be treated fairly and equally by insuring that the correct and lawful amount of transportation charges are uniformly collected. *Atchison, T. & S. F. Ry. v. Bouziden,* 307 F.2d 230 (10th Cir. 1962).

Specifically, the carrier relies upon cases where both shipper and carrier had equal knowledge of the facts and tariff schedules, but the carrier mistakenly undercharged the shipper on its billing. In those cases, estoppel was not available to the shipper as a defense to an action by the carrier for the amount of the undercharge. *Louisville & N. R.R. v. Maxwell,* 237 U.S. 94, 59 L. Ed. 853, 35 S. Ct. 494 (1915); *Bernstein Bros. Pipe & Mach. Co. v. Denver & R.G.W.R. Co.,* 193 F.2d 441 (10th Cir. 1951); *St. Louis-San*

---

[1]The Interstate Commerce Act, 49 U.S.C. § 6(7) provides:

"No carrier, unless otherwise provided by this chapter, shall engage or participate in the transportation of passengers or property, as defined in this chapter, unless the rates, fares, and charges upon which the same are transported by said carrier have been filed and published in accordance with the provisions of this chapter; nor shall any carrier charge or demand or collect or receive a greater or less or different compensation for such transportation of passengers or property, or for any service in connection therewith, between the points named in such tariffs than the rates, fares, and charges which are specified in the tariff filed and in effect at the time; nor shall any carrier refund or remit in any manner or by any device any portion of the rates, fares, and charges so specified, nor extend to any shipper or person any privileges or facilities in the transportation of passengers or property, except such as are specified in such tariffs."

*Francisco Ry. v. Miller Floors, Inc.,* 293 F. Supp. 869, 871 (W.D. Okla. 1968). However, these authorities are inapplicable to the unique facts of the instant case.

Here, the initial billing did not indicate that mechanical protective services had been instituted and additional charges incurred. Nor is there anything in the record to show that at the time of the billing the shipper was aware that the services had been performed. The shipper received an accurate billing from the carrier based upon published tariff schedules and changed its position in reliance thereon. It was not until 2 years later that it received a billing from the carrier for the mechanical services that had been rendered without its knowledge.

■ In determining whether or not the defense of estoppel is available to a shipper, the court in *Consolidated Freightways Corp. v. Admiral Corp.,* 442 F.2d 56, 62 (7th Cir. 1971), stated:

> The crucial question is not whether estoppel is urged as a bar to collection of the tariff rate as such, but whether the use of estoppel to prevent recovery on the facts of the particular case contradicts the statutory policy of Section 223 [49 U.S.C. § 323] to curb discriminatory treatment of shippers.

This test was approved in *Lyon Van Lines, Inc. v. Cole,* 9 Wn. App. 382, 387, 512 P.2d 1108 (1973). *See Southern Pac. Transp. Co. v. Campbell Soup Co.,* 455 F.2d 1219 (8th Cir. 1972). While these cases may be factually different from the instant case, the overriding issue is the same, *i.e.,* whether failure to find the shipper liable will contravene the anti-discriminatory purpose of the act. *See Missouri Pac. R.R. v. Lake Charles Grain & Grocery Co.,* 320 F. Supp. 1064 (W.D. La. 1971). This is not a case of preferential treatment of one shipper over another. Here, the use of estoppel will not result in the shipper being allowed to pay less than the going rate, which he is presumed to know; rather, the carrier is estopped for equitable reasons to collect at this late date for services performed of which the shipper had no knowledge. Thus, under the particular facts of this case, the use of estoppel to prevent recovery by the

carrier does not contravene the anti-discriminatory purposes of the act. Therefore, estoppel was properly before the court as a defense to the carrier's action.

■ With respect to the second issue, the carrier contends that the elements of estoppel are not present. The requisite elements were outlined in *In re Kitsap-Mason Dairymen's Ass'n*, 6 Wn. App. 926, 940, 497 P.2d 604 (1972):

(1) lack of knowledge and the means of knowledge of the truth as to the facts in question; (2) reliance upon the conduct of the party estopped; and (3) action based thereon of such a character as to change his position prejudicially.

First, the carrier argues that the shipper is presumed to know the lawful shipping rates, *Lyon Van Lines, Inc. v. Cole, supra* at 385, and therefore should not be heard to deny knowledge of the charges incurred and could not rely on the initial billing. The carrier's argument misses the point. The underlying question is whether the shipper knew or had the means to know that the carrier had performed the additional services. Only the carrier knew that the protective services were instituted because they were to be employed only when temperatures inside the freight cars fell below 30 degrees. It is obvious that the facts giving rise to the institution of such services were wholly within the knowledge of the carrier. There is nothing in the record or in the argument of counsel to refute the shipper's lack of knowledge that the mechanical protective services were provided and additional charges incurred. Thus, the first element of estoppel, lack of knowledge, is satisfied.

Moreover, the second and third elements of estoppel are satisfied under the facts of this case. The shipper had every right to treat the carrier's initial billing as a final billing and in reliance thereon prejudicially change its position by using the billing as a basis for settling its account with the growers.

Judgment affirmed.

McINTURFF, C.J., and MUNSON, J., concur.

Petition for rehearing denied August 7, 1975.