## The MASON AND DIXON LINES, INC.

### v.

## CROSSVILLE RUBBER PRODUCTS, INC.

### No. 75–11–NE–CV.

United States District Court, M. D. Tennessee, Northeastern Division.

Jan. 16, 1976.

Carl W. Eilers, Kingsport, Tenn., for plaintiff.

Thomas E. Looney, Swafford & Looney, Crossville, Tenn., for defendant.

### MEMORANDUM

MORTON, District Judge.

Plaintiff, an interstate motor carrier, sues the defendant, Crossville Rubber Products, Inc., to recover for uncollected freight charges in the amount of $5,886.82. It is stipulated that plaintiff is a motor carrier subject to Part II of the Interstate Commerce Act, 49 U.S.C. § 301, *et seq.* Defendant, a corporation doing business in Crossville, Tennessee, was the consignee of certain goods transported by plaintiff carrier, the freight charges for which are the sub-

ject of this suit. Jurisdiction of this court is invoked under 28 U.S.C. § 1337, the cause of action having arisen under the provisions of 49 U.S.C. § 323.

It is stipulated by the parties that on or before June 14, 1972, C & J Rigging Company, consignor of the freight shipment at issue, contracted with plaintiff carrier to transport certain freight. This freight, constituting six loads, originated in Philadelphia, Pennsylvania, on June 14, 1972, and terminated in Crossville, Tennessee, at defendant's plant facility, on June 16, 1972, with the exception of one load which arrived on June 19, 1972. It is further stipulated that defendant accepted delivery of the freight.

The proof at trial showed that defendant is a manufacturer of rubber products, and that it had contracted with Akron Rubber and Machinery Company of Akron, Ohio, to purchase some used machinery from that company. The used machinery was located in Philadelphia, Pennsylvania.

Through its dealings with Akron Rubber and Machinery Company, defendant was introduced to one Clark Grable, the owner of G & G Leasing Company, who was in the business of rigging and transporting freight. Defendant contracted with Mr. Grable, d/b/a G & G Leasing Company, to have the equipment rigged and shipped to defendant's plant at Crossville, Tennessee. The contract provided that the freight charges were to be paid on a collect basis by defendant, at the rate of $575.00 per load. The first shipment of the freight was brought into Crossville by one Jim Miller, an associate of Grable, to whom defendant paid $575.00.

As mentioned previously, plaintiff carrier undertook to deliver six loads of the freight to Crossville, pursuant to its contract with Mr. Grable, d/b/a C & J Rigging Company. The evidence showed that the bills of lading for each of the six loads were marked "PREPAID." The freight documents indicated that the consignor of the goods was C & J Rigging Company of Akron, Ohio.

The testimony indicated that employees of the defendant were somewhat surprised when the freight arrived in Crossville on June 16 via Mason-Dixon trucks, as defendant had contracted with Mr. Grable, d/b/a G & G Leasing Company, for the rigging and shipping of the equipment. Defendant corporation initially had no knowledge as to what C & J Rigging Company was, but it later learned that Clark Grable was a principal of C & J Rigging Company. The name "C & J" was derived from the initials of the first names of Clark Grable and his associate Jim Miller.

The proof at trial showed that agents of the defendant corporation refused to allow the goods to be unloaded until they confirmed that the freight charges were indeed prepaid. On June 16, when the first five loads arrived in Crossville, Mr. Charles Northrup, comptroller for defendant corporation, telephoned plaintiff's office in Kingsport, Tennessee, to inquire as to whether the freight charges were prepaid. Upon receiving confirmation from plaintiff's employees that the freight charges were prepaid, defendant corporation accepted delivery of the freight. On June 20, relying on the representation by plaintiff that the freight charges were prepaid by C & J Rigging Company, defendant issued a check to G & G Leasing Company in the amount of $5,125.00.[1] This amount included the costs of rigging, as well as the costs of shipping, the equipment. On June 28, 1972, prior to issuing its final payment to G & G Leasing Company in the amount of $1,100.00, defendant corporation once again contacted plaintiff at its Kingsport office to reconfirm that the freight charges were prepaid on the six loads of equipment.

The proof at trial showed that plaintiff carrier extended credit to C & J Rigging Company in the amount of $5,866.82 for the freight charges at issue. Plaintiff billed the consignor C & J Rigging Company within seven days, pursuant to 49 C.F.R. § 1322.2. No payment was forthcoming. Plaintiff continued in its attempts to collect the freight charges from the consignor,

1. This check was expedited through The Olson Sheet Metal Construction Co., Inc.

sending four follow-up billing notices. Plaintiff also employed Dun and Bradstreet as its collection agent in an effort to locate C & J Rigging Company. Finally, having been unsuccessful in its attempts to locate the consignor, plaintiff demanded payment of the freight charges from the defendant consignee on September 15, 1972. The court notes that this was some three months after the goods in question had been shipped.

It is also noteworthy that plaintiff's witness, Ronald R. Tiller, admitted that Mason and Dixon had not investigated the financial status of the consignor, C & J Rigging Company, prior to extending credit. Mr. Tiller testified that plaintiff had had no prior dealings with C & J Rigging Company.[2]

Defendant contends that plaintiff is equitably estopped from collecting the freight charges from defendant corporation because plaintiff represented to it that the charges had been prepaid by C & J Rigging Company. Defendant asserts that it relied upon the representations made to it by plaintiff when it issued payment to the consignor for the rigging and freight charges. Defendant also argues that plaintiff is equitably estopped from collecting the freight charges at issue because of plaintiff's lax and unlawful extension of credit to the consignor.

Plaintiff contends that 49 U.S.C. § 323 imposes absolute liability upon the consignee for the freight charges in dispute, and that the defense of equitable estoppel is not available to defendant. In support of this proposition, plaintiff cites the cases of *Pittsburgh, C.C. & St. L. Ry. v. Fink*, 250 U.S. 577, 40 S.Ct. 27, 63 L.Ed. 1151 (1919); and *Louisville & N.R.R. v. Central Iron & Coal Co.*, 265 U.S. 59, 44 S.Ct. 441, 68 L.Ed. 900 (1924).

This court is not convinced that the defense of equitable estoppel may not be asserted by defendant in the instant case. Both the *Fink* and *Central Iron & Coal* cases involve the collection of additional freight charges due where the carrier erroneously charged an amount lower than the published, legally payable tariff rate. These "undercharge" cases, in which estoppel is not allowable as a defense, have been distinguished by the Sixth Circuit Court of Appeals from the type of case currently at bar.

In *Davis v. Akron Feed & Milling Co.*, 296 F. 675 (6th Cir. 1924), the defendant contracted to purchase a shipment of wheat originating in Kansas at a price of $1,050 f.o.b. cars at Akron, Ohio. The railroad carrier had represented to defendant milling company that all freight charges had been paid on the shipment up to the time of its arrival in Chicago. Relying on this representation, defendant milling company had accepted the consignment, paying the scheduled freight charges of $64.38 from Chicago to Akron, Ohio. Defendant then paid to the seller the purchase price of the goods, less the $64.38 which it had paid for the freight charges. The railroad company later discovered that the freight charges from Kansas to Chicago, amounting to $128.59, had not in fact been paid. Having failed in its attempts to collect these charges from the consignor, the railway carrier brought suit against the milling company. The district judge allowed the defense of equitable estoppel and dismissed the complaint. The Sixth Circuit Court of Appeals affirmed the judgment of the district court, stating:

. . . [It does not appear] that the Supreme Court has held a shipper or consignee of freight liable for the payment of the full published scheduled rate, regardless of the misrepresentations by the railway company, upon any theory other than that the shipper and consignee are conclusively presumed to know the published scheduled rate, and therefore may not rely upon the representations made by the carrier. In this case no presumption obtains that the consignee knew that the freight upon this consignment from Kansas City to Chicago had not been

---

**2.** This court finds it of interest that plaintiff carrier, in previous years, had refused to extend credit to defendant corporation because defendant had no established credit record.

paid. That was not a matter of public knowledge. While the question of legal liability is not free from doubt, the equities are clearly with the consignee, and we are not impressed that the public interest demands such construction of the law as would make the consignee suffer a loss due to the fault, negligence, and misrepresentations of the carrier. 296 F. 677, 678.

The holding in *Davis v. Akron Feed & Milling Co., supra,* was reaffirmed by the Sixth Circuit in *United States v. Mason & Dixon Lines,* 222 F.2d 646, 649 (6th Cir. 1955). See also: *Consolidated Freightways Corp. of Del. v. Admiral Corp.,* 442 F.2d 56 (7th Cir. 1971).

■■■ Applying the law established in the above cited cases to the facts of the instant case, this court is of the opinion that defendant's assertion of equitable estoppel is a valid defense to this action. Plaintiff was most careless in its manner of extending credit to the consignor in the case at bar. It did not, by its own admission, investigate the background of C & J Rigging Company prior to extending credit to said company. 49 C.F.R. § 1322.1, promulgated pursuant to 49 U.S.C. § 323, provides in part:

*1322.1 Carrier may extend credit to shipper.*

(a) *Extension of credit.* Upon taking precautions deemed by them to be sufficient to assure payment of the tariff charges within the credit period herein specified, common carriers by motor vehicle may relinquish possession of freight in advance of the payment of the tariff charges thereon and may extend credit in the amount of such charges to those who undertake to pay them, such persons herein being called shipper, for a period of 7 days, excluding Saturdays, Sundays, and legal holidays.

In the case at bar, the plaintiff took virtually no precautions to assure payment by the consignor, and was somewhat casual in its attempts to collect the freight charges from the consignor. Plaintiff did not notify de-

fendant consignee until some three months after the goods had been delivered to it that there were problems with payment of the freight charges. Additionally, plaintiff repeatedly reassured defendant that the charges had been prepaid by the consignor. Based on these assurances the defendants disbursed sums totaling $6,225.00, an amount in excess of plaintiff's claim.

For the foregoing reasons, this court holds that plaintiff is equitably estopped from collecting the disputed freight charges from consignee.

An appropriate order will be entered.