## AERO MAYFLOWER TRANSIT COMPANY
### *v.* Jack HOFBERGER

75-277                                                532 S.W. 2d 759

### Opinion delivered February 23, 1976

*Harkness, Friedman & Kusin,* for appellant.

*Charles M. Bleil* and *Atchley, Russell, Waldrop & Hlavinka,* for appellee.

JOHN A. FOGLEMAN, Justice. Aero Mayflower Transit Company sued Jack Hofberger to recover $1,517.76 for moving household goods from Hillsdale, Michigan to El Dorado, Arkansas. This appeal comes from a judgment in favor of appellee by the circuit judge, trial by jury having been waived. We find no error and affirm.

Hofberger was employed by Permaneer Corporation in Hillsdale. He accepted employment by El Dorado Industries at El Dorado, Arkansas, with the understanding that the new employer would pay all relocation expenses. He obtained an estimate of the cost from the Mayflower Moving Service in Michigan through its agent in Jackson, Michigan. The agent asked Hofberger if it was a company move and Hofberger replied that the charges would be paid by El Dorado Industries, making it clear that under no circumstances would he pay these charges. Thereafter, Hofberger contacted Roberson as agent for appellant in El Dorado to discuss the move. Hofberger testified that he told Roberson that this was a company move, and that Hofberger was not to pay the bill. He said that Roberson agreed and a company authorization was obtained. Roberson admitted that he understood that El Dorado Industries was to pay for the move. He obtained a written acknowledgment that it would pay the charges which was in the form of a "Purchase Order" signed by a vice-president of El Dorado Industries. Hofberger said that if this authorization had not been obtained and if Roberson had not agreed to look to El Dorado Industries, the move would not have been made.

In spite of the requirement of the Interstate Commerce Commission that the person extended credit be billed within seven days (9 CRF § 1322.1), appellant first billed El Dorado Industries about one month after the move. The bill was not paid. El Dorado Industries encountered financial difficulties and went out of business. Four months later appellant first made demand for payment upon Hofberger who had signed the bill of lading as shipper and acknowledged the receipt of the goods as consignee. In the letter by which demand was

made appellant stated that it had not expected to have to turn to appellee for payment, but that he was primarily liable for the charges along with El Dorado Industries. Appellant also stated that knowledge of this obligation would probably come to Hofberger as a complete surprise and apologized, saying it had no other course of action because it was required by the Interstate Commerce Act, Title 49 U.S.C. 323 to enforce the obligation against him.

We do not interpret the applicable federal statutes and decisions of the United States Supreme Court to impose an absolute liability on the consignee in these circumstances, as appellant does, although it appears that some courts have done so in situations of this sort. See, e.g., *Aero Mayflower Transit Co.* v. *Hankey,* 140 S. 2d 465 (La. App. 1963); *National Van Lines, Inc.* v. *Herbert,* 81 S.D. 633, 148 N.W. 2d 36 (1966). On the other hand, some courts have sustained judgments denying recovery to the carrier where substantial evidence of an express contract or of an estoppel was similar to that before us. *Southern Pacific Transportation Co.* v. *Campbell Soup Co..* 455 F. 2d 1219 (8 Cir., 1972); *Consolidated Freightways Corp. of Del.* v. *Admiral Corp.,* 442 F. 2d 56 (7 Cir., 1971); *Tom Hicks Transfer Co.* v. *Ford, Bacon & Davis Texas Inc.,* 482 S.W. 2d 364 (Tex. Civ. App. 1972).[1] See also *Lyon Van Lines* v. *Cole,* 9 Wash. App. 382, 512 P. 2d 1108 (1973). The rationale of these cases is that the intention of the act was only to prevent rate discrimination and that the holdings of the United States Supreme Court in such cases as *Illinois Steel Co.* v. *B. & O. R. Co.,* 320 U.S. 508, 513, 64 S. Ct. 322, 88 L. Ed. 259 (1944); *Louisville & N. R. Co.* v. *United States,* 267 U.S. 395, 397, 45 S. Ct. 233, 69 L. Ed. 789 (1925); *Louisville & N.R. Co.* v. *Central Iron Co.,* 265 U.S. 59, 70, 44 S. Ct. 441, 68 L. Ed. 900 (1924); and *Pittsburgh, C., C. & St. L. R. Co.* v. *Fink,* 250 U.S. 577, 581, 40 S. Ct. 27, 63 L. Ed. 1151 (1919) prevented such discrimination by holding the consignee liable to pay the full legal charge under uniform shipping rates in the event of an undercharge through either contract or mistake (even where the consignee accepted the shipment with the understanding that the charges were prepaid, and even when the consignee had remitted the amount of the incorrect charges to the

---

[1]Contra: See *American Red Ball Transit Co.* v. *McCarthy,* 323 A. 2d 897 (N. H. 1974).

shipper) but that the consignee's liability was not absolute where no undercharge is involved and he had a specific contract that he was not liable or where the carrier's conduct estopped it from imposing liability on the consignee. These courts take the view that estoppel cannot operate as a means of avoiding the statutory requirement of equal rates, but that the defense of estoppel has not been eliminated under all circumstances.

There is no suggestion of any undercharge in this case. There was substantial evidence that Hofberger contracted against liability and that there were circumstances estopping appellant from asserting liability against Hofberger, based on the terms on which the shipment was accepted and the belated billing to both the employer and the employee. The circuit court judgment was based upon estoppel and since it had substantial evidentiary support, it is affirmed.