**OLSON DISTRIBUTING SYSTEMS, INC., Plaintiff–Appellant,**

v.

**GLASURIT AMERICA, INC., Defendant–Appellee.**

No. 87–1554.

United States Court of Appeals, Sixth Circuit.

Argued May 3, 1988.

Decided June 27, 1988.

Mark A. Baun (argued), Rickel, Neaton, Baun & Fenner, Detroit, Mich., for plaintiff-appellant.

J. Donald McLeod (argued), Dahlberg, Mallender & Gawne, Birmingham, Mich., for defendant-appellee.

Before LIVELY, MERRITT and BOGGS, Circuit Judges.

MERRITT, Circuit Judge.

In this diversity action between the plaintiff carrier and the defendant shipper for freight hauling charges, the issue is whether the doctrine of equitable estoppel bars plaintiff's claim for payment of freight bills where defendant paid the freight bills to an unlicensed freight forwarder, and where the carrier's documents and dilatory conduct led the shipper to believe that the carrier was receiving freight payments from the freight forwarder.

Plaintiff Olson Distributing Systems, Inc. is subrogated to the rights of Olson Transportation Company, a licensed contract motor carrier that performed freight deliveries for Glasurit America, Inc., a shipper, from March 29, 1984, through September 25, 1984. At the beginning of each delivery, the shipper gave the carrier a bill of lading indicating that the freight delivery was "prepaid." The shipper did not sign the "non-recourse" clause on the bills of lading.

The unlicensed freight forwarder who originally set up the Olson/Glasurit delivery arrangement told Olson Distributing to send all freight bills to LSM Transportation Service, the freight forwarder's auditing company. Olson Distributing then arranged to pay Olson Transportation for its delivery services, and then Olson Distributing billed LSM. It is undisputed that Glasurit paid LSM for the freight charges, but LSM absconded and never forwarded any money to either Olson Transportation or Olson Distributing. Soon after deliveries began, Olson Distributing mistakenly sent one or two bills directly to Glasurit, which sent them on to LSM so they could be processed. With the exception of these bills, plaintiff did not send LSM freight bills until November or December 1984, two or three months after the last delivery for Glasurit. App. 89. Plaintiff also did not notify Glasurit of LSM's nonpayment until at least three months after the last delivery. App. 95.

Olson initiated this lawsuit claiming that Glasurit should be required to double-pay

the freight charges since Olson was never paid. Glasurit filed a motion for summary judgment. In response, Olson argued that the bills of lading constituted contracts between it and Glasurit, and that LSM was Glasurit's agent. In his report and recommendation, the magistrate concluded that even though the bills of lading established contracts, the plaintiff was equitably estopped from enforcing them. The District Court adopted the magistrate's findings and also concluded that LSM was not Glasurit's agent.

Although it is clear that the relationship between Olson,[1] LSM and Glasurit involved the relationship of carrier, freight forwarder and shipper, it is unclear whether the freight forwarder was the agent of the carrier or of the shipper. Courts have normally defined the role of a freight forwarder as that of an independent contractor. *See, e.g., Strachan Shipping Co. v. Dresser Industries, Inc.,* 701 F.2d 483, 487 (5th Cir.1983). However, the facts and circumstances of a particular case may indicate that the freight forwarder was actually acting as an agent to one of the parties. In this case, however we characterize the parties' relationship with the freight forwarder, the parties understood that the carrier would bill, and expect payment from, the freight forwarder. Because the freight forwarder absconded, the central question in this case is upon whom the loss should fall. Here the doctrine of equitable estoppel requires that the loss fall on the carrier because its actions had the effect of lulling the shipper into believing that it was expecting and receiving payment from the freight forwarder.

The doctrine of equitable estoppel means that

> he who by his language or conduct leads another to do what he would not otherwise have done, shall not subject such person to loss or injury by disappointing the expectations upon which he acted.

*Dickerson v. Colgrove,* 100 U.S. (10 Otto) 578, 580, 25 L.Ed. 618 (1879); *see also* 1 S. Williston *Contracts* § 139, at 602 (3rd ed. 1957).

In *Southern Pacific Transportation Co. v. Commercial Metals,* 456 U.S. 336, 351, 102 S.Ct. 1815, 1824, 72 L.Ed.2d 114 (1982), the Supreme Court recognized that in cases where a defendant has previously paid the freight bill, and relied on the assumption that plaintiff was paid for its freight services, equity may bar a plaintiff's recovery. In holding that violation of an ICC regulation cannot estop a carrier from enforcing freight payments where payments were never made, the court distinguished the equitable considerations involved in that case from those involved in double payment cases which

> constitute their own category and stand against the placement of duplication of liability upon an innocent party.

*Id.* at 351, 102 S.Ct. at 1824–25 (citing *Consolidated Freightways Corp. v. Admiral Corp.,* 442 F.2d 56, 65 (7th Cir. 1971)(Stevens, J., concurring)).

In *United States v. Mason & Dixon Lines, Inc.,* 222 F.2d 646, 647–50 (6th Cir. 1955), and *Davis v. Akron Feed & Fuel Co.,* 296 F. 675, 677 (6th Cir.1924), this Court held that the equitable estoppel doctrine barred plaintiffs from recovering freight charges where defendants were justified in believing that plaintiffs had been paid for their services. In *Consolidated Freightways Corp. v. Admiral Corp.,* 442 F.2d at 59–63, a double payment case similar to this case, the court ruled that plaintiff was estopped from recovering freight charges because it had given defendant the impression that it was receiving payments from the freight forwarder. *Id.* at 58–60. *See also Inman Freight System, Inc. v. Olin Corp.,* 807 F.2d 117, 121 (8th Cir. 1986); *Southern Pacific Trans. Co. v. Campbell Soup Co.,* 455 F.2d 1219, 1222 (8th Cir.1972); *Mason & Dixon Lines v. Crossville Rubber Products,* 414 F.Supp. 166, 169 (M.D.Tenn.1976); *Farrell Lines, Inc. v. Titan Industrial Corp.,* 306 F.Supp. 1348, 1351 (S.D.N.Y.), *aff'd* 419 F.2d 835 (2d Cir.1969), *cert. denied,* 397 U.S. 1042, 90 S.Ct. 1365, 25 L.Ed.2d 653 (1970). *Cf. Strachan Shipping Co. v. Dresser Industries, Inc.,* 701 F.2d 483 (5th Cir.1983).

---

**1.** Except where necessary to make a distinction, the remainder of this opinion refers to Olson Distribution and Olson Transportation collectively as "Olson" or "plaintiff."

Applying these cases to Olson's situation, the doctrine of equitable estoppel bars recovery. It is undisputed that Glasurit has paid once for all of Olson's freight charges. Olson's documents and actions gave Glasurit the clear impression that Olson was steadily receiving payments from LSM and no problems had arisen. Olson Transportation prepared delivery receipts which its drivers routinely gave Glasurit when they returned from their round-trip delivery runs. These receipts were marked: "bill to: LSM Transportation Service." App. 69. Olson's agent marked on Olson's copies of the bills of lading this notation: "mail freight charges to: LSM Transportation Service." App. 70. And Olson's freight bills clearly stated that freight charges were being billed "to LSM Transportation Service." App. 71. These documents establish that Glasurit and Olson understood that Olson should send all freight charges to LSM, and should expect payment from LSM, not from Glasurit.

In addition, during the time period when Olson delivered goods for Glasurit, the following ICC regulations were in effect:

Freight bills for all transportation charges shall be presented to the shippers within 7 calendar days following delivery of the freight.

49 C.F.R. § 1322.3 (1984).

Upon taking precautions deemed by them sufficient to assure payment of the tariff charges ... common carriers by motor may relinquish possession of freight in advance of payment ... *and may extend credit in the amount of such charges* to those who undertake to pay them, such persons being called shippers, *for a period of 7 days....*

49 C.F.R. § 1322.1(a) (1984) (emphasis added). Plaintiff's delay by not billing LSM until two or three months after the last delivery violated the ICC requirement that carriers send freight bills within seven days of delivery. Also, plaintiff's delay by not notifying Glasurit, until over three months after the last delivery, that LSM was not sending any money, apparently violated the ICC's seven-day credit regulation. While plaintiff's violations of

§ 1322.3 and § 1322.1(a) alone do not defeat its claim for freight payments, see *Southern Pacific Transp. Co. v. Commercial Metals*, 456 U.S. at 352, 102 S.Ct. at 1825, the violations are other factors supporting Glasurit's equitable estoppel argument.

Finally, plaintiff's long delay in informing Glasurit of LSM's nonpayment does not simply evidence a regulatory violation. This unexplained failure to notify Glasurit resulted in the escalation of the loss. The longer Olson delayed, the more money LSM piled up. If Glasurit had known earlier of LSM's fraud, then it could have paid Olson directly and thus prevented accumulation of the loss.

Under these circumstances, we agree with the District Court that plaintiff is estopped from recovering any money from Glasurit. We therefore affirm the District Court's grant of defendant's motion for summary judgment.